[No. S060352. Mar. 4, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
STEVEN B. LEE, Defendant and Appellant.

**COUNSEL**

Victor J. Morse, under appointment by the Supreme Court, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Doug MacMaster, Michael E. Banister and Catherine A. Rivlin, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BAXTER, J.**—The sole question presented in this case is whether the Court of Appeal erred in concluding that even though the evidence was sufficient to support a conviction of second degree murder (Pen. Code, § 187),[1] defendant's conviction of voluntary manslaughter (§ 192, subd. (a)) must be reversed because evidence of provocation was insufficient.

The Court of Appeal held that defendant's request for a voluntary manslaughter instruction was not invited error which precluded his appellate claim. ▉ It also held that the evidence was not sufficient to establish that defendant acted under provocation by the victim and thus did not support a conviction of voluntary manslaughter. Finally the court held that, because the evidence warranted and the jury might have convicted defendant of involuntary manslaughter had an instruction on misdemeanor manslaughter (§ 192, subd. (b)) been given, the error in permitting the jury to return a voluntary manslaughter verdict was not favorable to defendant within the reasoning of *People* v. *Powell* (1949) 34 Cal.2d 196 [208 P.2d 974] (*Powell*). The Court of Appeal therefore reversed the conviction with directions that a conviction of involuntary manslaughter be entered.

---

[1] All statutory references are to the Penal Code.

We conclude that the Court of Appeal erred in doing so. Both sides agree that the evidence was sufficient to support conviction of second degree murder. The verdict establishes that, in convicting defendant of voluntary manslaughter under the instructions it was given, the jury necessarily found all of the facts necessary to establish second degree murder even if the jury believed that malice was negated by heat of passion or intoxication. Although the trial court erred in failing to instruct on the misdemeanor manslaughter form of involuntary manslaughter, that error could not have prejudiced defendant because the involuntary manslaughter instructions that were given permitted conviction of that offense if the jury found only an unlawful, unintentional killing without malice.

In these circumstances *Powell* does apply. If there was error in instructing on voluntary manslaughter, that error was favorable to defendant, as was any error in returning a verdict of voluntary manslaughter. Defendant may not complain on appeal about errors favorable to him.[2]

We shall, therefore, reverse the judgment of the Court of Appeal.

## I

### TRIAL AND CONVICTION

The tragic events which led to this conviction occurred after defendant and the victim, his wife Mee Nor, hosted a Chinese New Year's party in their home on February 14, 1991.[3] Their two young daughters, Mary and Susan, two friends of daughter Mary, and Mary's teacher, Manuel Bella, were present. Defendant did not appear to harbor any anger toward his wife, but he drank heavily from a bottle of cognac he had purchased that day. The 750-milliliter bottle had not been opened until dinnertime, but defendant had consumed half of the bottle before Bella arrived and the group sat down for

[2]Except as specifically noted in our subsequent discussion, we are not called upon to, and do not, decide whether the trial court's instructions were correct. It is unnecessary to resolve in this case whether provocation/heat of passion or intent to kill are "elements" of voluntary manslaughter, whether involuntary manslaughter may be found in circumstances other than those specifically described in section 192, or whether manslaughter in any of its forms is an offense necessarily included in murder. We express no opinion on any of these questions.

[3]Defendant was born in Burma (Myanmar) where he lived until he was grown and married. He then moved to Taiwan, where he lived for 10 years before coming to the United States. He and his wife worked for several years to save enough money to bring their two daughters to the United States in 1989. Burmese is defendant's native language. He also speaks the Toishan dialect, which is similar to Cantonese, and Mandarin. At trial an interpreter translated the proceedings from English to Mandarin and Mandarin to English.

The trial of this matter did not commence until January 1995, as defendant had been found incompetent to stand trial.

dinner. Bella arrived at the Lee home at 6:30 p.m. At that time defendant appeared to be his usual self. Before they sat down to eat defendant had at least two glasses of cognac. As the food which defendant had prepared was ready, the group sat down for dinner within five to ten minutes of the time Bella arrived. The mood was happy and Bella observed no hostility between defendant and his wife.

Bella had only one small drink. Defendant drank throughout the evening. He became emotional and told Bella he had lost his job. He appeared depressed. As the evening progressed defendant became less coherent, his eyelids drooped, and he began to nod. He tried but was unable to stand and escort Bella to the door when Bella left shortly before the shooting. The cognac bottle was empty or almost empty at the end of dinner.

After Bella left, 12-year-old Mary saw her parents arguing and pushing each other. The couple argued almost daily, but on this occasion their voices were low and soft and Mary could not hear what they argued about. Defendant appeared different to Mary, as if he were "possessed by a spirit." He had a blank stare and was staggering.

Defendant went to the bedroom, staggering and falling against the wall, and returned two or three minutes later with his handgun, a .357 magnum Smith & Wesson. He pulled Mee Nor from the kitchen sink, where she was washing dishes, into the hallway, where the couple continued to push each other with the gun between them. Mary went back to her bedroom, heard her parents arguing, and then heard a shot. When she came out of her room, she saw her father holding Mee Nor who was lying on the floor, begging her not to die. The gun was on the floor. Mee Nor had died instantly from a contact or near contact gunshot to the head just above her eye. Defendant's eye-glasses and the empty cognac bottle were found on the dining table. Each had blood on them. At 2:20 a.m. on February 15, the day after the shooting, defendant had a blood-alcohol level of .26 percent.

An expert testified that at the time of the shooting defendant's blood-alcohol level was between .33 and .39 percent.[4] At that level an individual has confusion, severe muscular incoordination, difficulty in walking and talking, and loss of critical judgment. It is a level of blood alcohol at which an individual can be approaching unconsciousness, a comatose state, or even death. A person who drank alcohol on a regular basis would have a greater

[4]The People relied on the presence of blood on the empty cognac bottle for an argument that defendant consumed some alcohol after the shooting. Mary testified, however, that defendant had nothing to drink after the shot was fired. It appears that defendant consumed most of the 750-milliliter bottle himself during a period of less than two hours.

tolerance than an inexperienced drinker and would be able to function in what appears to be a reasonably normal way. The level of impairment would be the same, however, in the regular drinker and nondrinker at the same blood-alcohol level.

Defendant was charged with murder. The information also alleged that in the commission of the offense he had used a firearm (§ 12022.5, subd. (a)) and that the offense was a serious felony within the meaning of section 1192.7, subdivision (c)(8). At the close of the evidence the jury was instructed on murder.

Both the prosecution and the defense requested instructions on voluntary manslaughter. The trial court instructed the jury that voluntary intoxication could negate any specific intent or mental element of murder or voluntary manslaughter. Subsequently, in defining voluntary manslaughter the court instructed that if malice was lacking, an unlawful killing could be voluntary manslaughter even if the killing was intentional. The court then instructed that there was no malice if the killing occurred on sudden quarrel or heat of passion, going on to explain the provocation necessary to justify finding sudden quarrel or heat of passion. Three instructions told the jury intent to kill was an element of voluntary manslaughter.

The court then instructed that an unlawful killing without malice aforethought and without intent to kill was involuntary manslaughter. The court instructed that a killing was unlawful within the meaning of the instruction if committed during an ordinarily lawful act that posed a high risk of death or great bodily harm without due caution and circumspection, a criminal negligence theory of involuntary manslaughter. The court also instructed that a killing by a person who was unconscious as a result of voluntary intoxication was involuntary manslaughter. The court did not instruct on the "misdemeanor manslaughter" form of involuntary manslaughter, however. The omitted instruction, part of CALJIC No. 8.51, would have advised the jury that "If a person causes another's death, while committing a misdemeanor or infraction which is dangerous to human life under the circumstances of its commission, the crime is involuntary manslaughter."

Defense counsel argued that if defendant killed his wife there was no malice. Therefore, the killing could only be manslaughter. She argued that the evidence showed at most the elements of involuntary manslaughter. She suggested that defendant was unconscious as a result of intoxication and, under the applicable law, his offense was involuntary manslaughter.

During deliberations the jury requested that the testimony of the defense expert on toxicology who had described the effects of intoxication be reread.

The jury first returned a verdict of not guilty of first degree murder and reported itself unable to reach a unanimous verdict on second degree murder. The court then reread CALJIC No. 8.72: "If you are satisfied beyond a reasonable doubt that the killing was unlawful but you have a reasonable doubt whether the crime is murder or manslaughter, you must give the defendant the benefit of such doubt and find it to be manslaughter rather than murder." After further jury inquiries regarding the meaning of "conscious disregard for human life and the instruction defining second degree murder," the jury returned verdicts of not guilty of second degree murder and guilty of voluntary manslaughter, also finding true the charge that defendant personally used a firearm in the commission of that offense.

Defendant appealed.

## II

### APPEAL

On appeal defendant contended that there was insufficient evidence to support the verdict of voluntary manslaughter and that the trial court erred in failing to give complete instructions on involuntary manslaughter. In support of the first claim, he argued that the evidence was not sufficient to establish an intent to kill or provocation. In support of the second, he argued that the omission of an instruction on misdemeanor manslaughter prevented the jury from finding that he had committed misdemeanor manslaughter on a theory that the killing occurred during the brandishing of a firearm in violation of section 417, subdivision (a)(2), a misdemeanor.[5] Relying on *People* v. *Williams* (1975) 13 Cal.3d 559, 564 [119 Cal.Rptr. 210, 531 P.2d 778], and *People* v. *McManis* (1972) 26 Cal.App.3d 608, 614 [102 Cal.Rptr. 889], he argued that his failure to request that the instruction be given on the basis of section 417 was irrelevant as the court was obligated to give that instruction sua sponte.

It was more likely, defendant argued, that the jury would believe that in holding the weapon during the pushing and shoving exchange, he committed a misdemeanor that was inherently dangerous to human life than it was that the jury would believe that the killing occurred while he was engaging in an ordinarily lawful act which involves a risk of death or great bodily harm without due caution or circumspection.

---

[5]Section 417, subdivision (a)(2): "Every person who, except in self-defense, in the presence of any other person, draws or exhibits any firearm, whether loaded or unloaded, in a rude, angry, or threatening manner, or who in any manner, unlawfully uses the same in any fight or quarrel is guilty of a misdemeanor . . . ."

The Court of Appeal held that the evidence was sufficient to support a jury finding of intent to kill. It nonetheless reversed the judgment of conviction on the ground that a reasonable trier of fact could not find the evidence sufficient to establish that the killing occurred "upon a sudden quarrel or heat of passion" (§ 192, subd. (a)) because there was no evidence that the quarrel was induced by provocation. (*People* v. *Saille* (1991) 54 Cal.3d 1103, 1114 [2 Cal.Rptr.2d 364, 820 P.2d 588].) Relying on *People* v. *Williams* (1969) 71 Cal.2d 614, 624 [79 Cal.Rptr. 65, 456 P.2d 633], the court reasoned that, as an element of the offense, provocation must be affirmatively demonstrated, not left to speculation. The voluntary manslaughter verdict was, therefore, "legally insupportable."

The Court of Appeal rejected the People's argument that defendant could not obtain a reversal on the basis of an error that was favorable to the defendant. (See *Powell, supra,* 34 Cal.2d at p. 205.) That rule was inapplicable, the court reasoned, because the evidence did not indisputably establish as it had in *Powell* that if the defendant, who had been convicted of manslaughter, was guilty of any crime it was second degree murder, making the error there one that was favorable to the defendant. In this case there was a "distinct possibility" that defendant's offense was no more than involuntary manslaughter. However, the trial court had also erred in giving instructions on involuntary manslaughter when it omitted the instruction on misdemeanor manslaughter. Because the jury did not have that option available when it brought in a verdict of voluntary manslaughter, the Court of Appeal concluded it could not determine that error in returning the voluntary manslaughter verdict was an error favorable to defendant.

The Court of Appeal reversed the judgment, reasoning that the jury had acquitted defendant of murder, the sudden quarrel/heat of passion theory of voluntary manslaughter was not supported by the evidence, and the evidence did support conviction of involuntary manslaughter. The court therefore remanded defendant to the trial court for resentencing on the lesser offense.

This court granted review to consider respondent's arguments that (1) *People* v. *Saille, supra,* 54 Cal.3d at page 1114, holding that under section 188 malice is established whenever an intentional killing is shown, should not preclude a verdict of voluntary manslaughter when a sympathetic jury finds intent to kill, and (2) that a voluntary manslaughter conviction need not be reduced to involuntary manslaughter when it is rendered in response to instructions requested by a defendant that were not supported by the evidence and the verdict resulting from that error was favorable to the defendant.

We conclude that *Powell, supra,* 34 Cal.2d 196, is dispositive regardless of whether defendant's request for the voluntary manslaughter instruction

was a tactical decision and thus invited error. Therefore, we address only the basis for our conclusion that the errors, if any, in instructing on voluntary manslaughter on sudden quarrel or heat of passion and the conviction of voluntary manslaughter were favorable to the defendant notwithstanding the omitted instruction on the misdemeanor manslaughter form of involuntary manslaughter.

## III

## DISCUSSION

It has long been the rule in this state that, in the absence of prejudice, a defendant may not complain of error favorable to the defendant, including the giving of correct, but inapplicable, instructions and return of a verdict of an offense less than that which the evidence shows. (§ 1258; see *Powell, supra,* 34 Cal.2d at pp. 206-207; *People* v. *Tuthill* (1947) 31 Cal.2d 92, 102 [187 P.2d 16]; *People* v. *Finch* (1963) 213 Cal.App.2d 752, 777 [29 Cal.Rptr. 420]; *People* v. *Thompson* (1961) 193 Cal.App.2d 620, 626 [14 Cal.Rptr. 512]; *People* v. *Kelley* (1914) 24 Cal.App. 54, 61 [140 P. 302].)

"[E]ven if it be assumed that the trier of fact erred here when he found defendant guilty only of manslaughter, defendant cannot invoke reversal on an error which is favorable to him. [Citations.] An appellant is precluded from complaining that he was convicted of a lesser offense than the one of which he is guilty according to undisputed evidence, or according to that view of the evidence which, it indisputably appears, the trier of fact accepted." (*Powell, supra,* 34 Cal.2d at pp. 205-206.)

In *Powell,* the defendant was charged with abortion and murder of the victim. In a nonjury trial the court found him guilty of abortion and voluntary manslaughter. On appeal the defendant argued that the court did not have the power to find him guilty of manslaughter because the evidence showed that he was either guilty of second degree murder or of no crime. The court rejected that reasoning and held that regardless of whether the verdict was simply error, or was the product of extralegal considerations such as mercy, the trier of fact had the power to return a verdict of a lesser offense than that shown either by undisputed evidence or by the version of the evidence the record demonstrated had been accepted by the trier of fact. (*Powell, supra,* 34 Cal.2d. at pp. 206-207.)

Defendant here argues that *Powell* is not applicable because in this case (1) the jury did not indisputably accept the evidence that would support a conviction of the greater offense, second degree murder, and (2) the evidence would have supported an instruction on involuntary manslaughter on a

theory that the killing occurred in the commission of the misdemeanor of brandishing a weapon, but the appropriate instruction was omitted. Unlike the circumstances in *Powell*, defendant argues, he was not guilty only of murder or of no offense. Thus the voluntary manslaughter verdict was not favorable to him.

For reasons discussed below, we disagree.

Before addressing the applicability of *Powell* to this case, we note our agreement with the Court of Appeal on two important points. The evidence was sufficient to support a finding of intent to kill and the trial court erred in failing to fully instruct on involuntary manslaughter.

### A. *Evidence of Intent to Kill.*

In determining whether, based on the entire record, a reasonable trier of fact could conclude that the People proved the existence of an element of an offense beyond a reasonable doubt, a reviewing court considers the evidence in a light most favorable to the judgment and presumes the existence of every fact that could reasonably be deduced from the evidence. (*People* v. *Crittenden* (1994) 9 Cal.4th 83, 139 [36 Cal.Rptr.2d 474, 885 P.2d 887].) The standard is the same when a case relies in part on circumstantial evidence. " ' " 'If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment.' " [Citations.]' " (*People* v. *Stanley* (1995) 10 Cal.4th 764, 793 [42 Cal.Rptr.2d 543, 897 P.2d 481].)

The evidence that defendant quarreled with his wife, the quarrel escalated into shoving and pushing, defendant broke off the argument, went to another room and obtained a loaded gun, and that gun was fired at close range while in contact with the victim's head, is clearly sufficient to support an inference that defendant retrieved and fired the gun with the intent to kill his wife.

### B. *Instructions.*

#### 1. *Voluntary manslaughter instructions.*

The Penal Code defines manslaughter as "the unlawful killing of a human being without malice." (§ 192.) The offense is voluntary manslaughter when the killing is "upon a sudden quarrel or heat of passion." (*Id.*, subd. (a).) As we have explained in greater detail in *People* v. *Breverman* (1998)

19 Cal.4th 142, 154 [77 Cal.Rptr.2d 870, 960 P.2d 1094] (*Breverman*), manslaughter has been considered a lesser, necessarily included, offense of intentional murder. Generally, an intent to unlawfully kill reflects malice. (§ 188; *Breverman, supra,* 19 Cal.4th at p. 153; *People v. Saille, supra,* 54 Cal.3d at p. 1113.) An unlawful killing with malice is murder. (§ 187.) Nonetheless, an intentional killing is reduced to voluntary manslaughter if other evidence negates malice. Malice is presumptively absent when the defendant acts upon a sudden quarrel or heat of passion on sufficient provocation (§ 192, subd. (a)), or kills in the unreasonable, but good faith, belief that deadly force is necessary in self-defense. (*In re Christian S.* (1994) 7 Cal.4th 768 [30 Cal.Rptr.2d 33, 872 P.2d 574].) Only these circumstances negate malice when a defendant intends to kill. (*People v. Barton* (1995) 12 Cal.4th 186, 199 [47 Cal.Rptr.2d 569, 906 P.2d 531].)

█ Although section 192, subdivision (a), refers to "sudden quarrel or heat of passion," the factor which distinguishes the "heat of passion" form of voluntary manslaughter from murder is provocation. The provocation which incites the defendant to homicidal conduct in the heat of passion must be caused by the victim (see *In re Thomas C.* (1986) 183 Cal.App.3d 786, 798 [228 Cal.Rptr. 430]), or be conduct reasonably believed by the defendant to have been engaged in by the victim. (See *People v. Brooks* (1986) 185 Cal.App.3d 687, 694 [230 Cal.Rptr. 86]; see also 1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) Crimes Against the Person, § 512, p. 579.) The provocative conduct by the victim may be physical or verbal, but the conduct must be sufficiently provocative that it would cause an ordinary person of average disposition to act rashly or without due deliberation and reflection. (*People v. Berry* (1976) 18 Cal.3d 509, 515 [134 Cal.Rptr. 415, 556 P.2d 777]; *People v. Valentine* (1946) 28 Cal.2d 121, 138-139 [169 P.2d 1].) "Heat of passion arises when 'at the time of the killing, the reason of the accused was obscured or disturbed by passion to such an extent as would cause the ordinarily reasonable person of average disposition to act rashly and without deliberation and reflection, and from such passion rather than from judgment.' " (*People v. Barton, supra,* 12 Cal.4th at p. 201.)

There was evidence here that defendant and Mee Nor were engaged in an argument prior to the shooting. There was no direct evidence that Mee Nor did or said anything sufficiently provocative that her conduct would cause an average person to react with deadly passion. Nor was there direct evidence that defendant acted under the influence of such passion.

Respondent argues that something Mee Nor said to defendant after the dinner guests left seemed to anger defendant as he and his wife argued and pushed each other for five minutes before the gun was fired. Respondent also

argues that defendant may have been prone to emotional instability and lacked critical judgment as a result of his intoxication, thus increasing the possibility that he reacted strongly to only modest provocation.

The test of adequate provocation is an objective one, however. The provocation must be such that an average, sober person would be so inflamed that he or she would lose reason and judgment. Adequate provocation and heat of passion must be affirmatively demonstrated. (*People v. Sedeno* (1974) 10 Cal.3d 703, 719 [112 Cal.Rptr. 1, 518 P.2d 913]; *People v. Williams, supra,* 71 Cal.2d 614, 624.)

We need not decide here whether the evidence of provocation was insufficient to permit a reasonable jury to find that the killing was voluntary manslaughter rather than murder on a heat of passion theory[6] or whether giving the instruction on voluntary manslaughter was error (*Breverman, supra,* 19 Cal.4th at p. 162; *People v. Steger* (1976) 16 Cal.3d 539, 549 [128 Cal.Rptr. 161, 546 P.2d 665, 83 A.L.R.3d 1206]; *People v. Anderson* (1965) 63 Cal.2d 351, 360 [46 Cal.Rptr. 763, 406 P.2d 43]), however. We need not do so because, as explained below, even assuming arguendo that the instruction and the verdict were erroneous, any such error was favorable to defendant.

### 2. *Involuntary manslaughter instructions.*

The first instruction on involuntary manslaughter given by the court was: "Every person who unlawfully kills a human being without malice aforethought and without an intent to kill is guilty of the crime of involuntary manslaughter in violation of section 192[, subdivision] (b). In order to prove such crime, each of the following elements must be proved: One, a human being was killed; two, the killing was unlawful." It was only after that instruction had been given that the court gave the instructions, requested by defendant, which described two circumstances in which involuntary manslaughter might be committed—criminal negligence and unconsciousness resulting from voluntary intoxication.

■ As noted, the trial court did not instruct on misdemeanor manslaughter—an unlawful killing without malice in the commission of an unlawful

---

[6]The heat of passion aroused by "sudden quarrel" or "mutual combat" form of voluntary manslaughter is not implicated here. A defendant who kills during the mutual combat contemplated by this type of voluntary manslaughter may not take undue advantage. (*People v. Sanchez* (1864) 24 Cal. 17, 27.) Not only had defendant broken off the mutual pushing and shoving with his wife prior to the homicide, but when it resumed, his use of the gun was necessarily an undue advantage. (See also § 195: "Homicide is excusable in the following cases: [¶] . . . [¶] 2. When committed by accident and misfortune, in the heat of passion, upon any sudden and sufficient provocation, or upon a sudden combat, when no undue advantage is taken, nor any dangerous weapon used, and when the killing is not done in a cruel or unusual manner.")

act not amounting to felony. (§ 192, subd. (b).) That was error. As the Court of Appeal recognized, when defendant used his gun in the quarrel with Mee Nor he violated section 417, subdivision (a)(2), committing the misdemeanor offense of "brandishing" a weapon. In *Breverman, supra,* 19 Cal.4th at page 160, we confirmed that the duty to instruct sua sponte on lesser included offenses is not satisfied by instructing on only one theory of an offense if other theories are supported by the evidence. This obligation exists even when the defendant does not request the instruction or objects to its being given. (*People* v. *Barton, supra,* 12 Cal.4th at p. 203.) Evidence that an unlawful killing without malice occurred in the commission of an unlawful act not amounting to felony—the "misdemeanor manslaughter" theory of involuntary manslaughter—is not simply the basis for a defense. Just as evidence of "unreasonable self-defense" may establish one form of voluntary manslaughter and is not simply a defense (*Breverman, supra,* 19 Cal.4th at p. 159; *People* v. *Barton, supra,* 12 Cal.4th at pp. 200-201), evidence of misdemeanor manslaughter may establish another form of involuntary manslaughter. For that reason the trial court erred in failing to instruct sua sponte on that theory.

Nonetheless, we do not agree with the Court of Appeal and the dissent of Justice Mosk that because defendant was acquitted of murder, and evidence of heat of passion was insufficient to support the voluntary manslaughter verdict, a judgment of involuntary manslaughter should be imposed. Whether the voluntary manslaughter verdict should be upheld or is, as the Court of Appeal held, legally insupportable in the absence of adequate provocation is a question independent of whether the trial court erred in instructing on manslaughter. If error in giving the voluntary manslaughter instruction or in returning that verdict was favorable to defendant, he may not complain of the error on appeal and the judgment must be affirmed.

C. *The Voluntary Manslaughter Conviction Was Favorable to Defendant.*

 Respondent asks the court to apply the *Powell* rule—defendant may not complain on appeal of an error favorable to the defendant or that he or she has been convicted of a lesser offense than that which the evidence indisputably accepted by the jury warranted. (*Powell, supra,* 34 Cal.2d at p. 206.) Defendant argues that *Powell* is distinguishable because, unlike the defendant in *Powell,* he was not guilty of murder or of no offense. The evidence was such that he might also have been convicted of involuntary manslaughter had the jury been properly instructed. We do not consider that difference dispositive. It is not so because defendant's jury was given a general definition of involuntary manslaughter under which it could have

convicted defendant, notwithstanding the error in failing to instruct on misdemeanor manslaughter. The instructions on the criminal negligence and unconsciousness-induced-by-voluntary-intoxication forms of involuntary manslaughter were illustrative, not restrictive. After defining involuntary manslaughter simply as an unlawful, unintentional killing without malice, the court instructed: (1) "A killing is unlawful within the meaning of this instruction if it occurred . . . in the commission of an act ordinarily lawful which involves a high degree of risk of death or great bodily harm without due causation and circumspection . . ." and (2) "If you find that a defendant while unconscious as a result of voluntary intoxication killed another human being without intent to kill and without malice aforethought, the crime is involuntary manslaughter. When a person voluntarily induces his own intoxication to the point of unconsciousness, he or she assumes the risk that while unconscious he or she will commit acts inherently dangerous to human life or safety. Under the circumstances, the law implies criminal negligence." Neither instruction implied that these two forms of involuntary manslaughter were exclusive.

█ In *Breverman, supra,* 19 Cal.4th at page 174, we held that article VI, section 13 of the California Constitution mandates that the court assess the impact of erroneous misdirection of a jury, including failure to instruct on one of several theories on which guilt of a lesser included offense might be found, on the basis of the entire cause, including the evidence, to determine if the error resulted in a miscarriage of justice. The error does so only if it appears reasonably probable that a result more favorable to the defendant would have been reached absent the error. (See also *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].) In posttrial review of a judgment an appellate court "focuses not on what a reasonable jury *could* do, but what such a jury is *likely* to have done in the absence of the error under consideration." (*Breverman, supra,* 19 Cal.4th at p. 177.) █ We see no basis for distinguishing an assessment of error in failing to instruct on one involuntary manslaughter theory in this case for purposes of applying *Powell.* We must examine the jury's action in light of the evidence and the instructions given to determine if the voluntary manslaughter verdict was favorable to defendant.

Here, although a misdemeanor manslaughter instruction was erroneously omitted, the jury had the opportunity to convict defendant of involuntary manslaughter if it found simply an unlawful, unintentional killing, without malice. The jury nonetheless rejected the option of an involuntary manslaughter verdict, found intent to kill, and convicted defendant of voluntary manslaughter.

The jury had been instructed three times that it must find intent to kill in order to return a verdict of voluntary manslaughter.[7] The evidence supported such a finding. We conclude on that basis that the error in failing to instruct on misdemeanor manslaughter was not prejudicial. It is not likely that had it been properly instructed the jury would have returned an involuntary manslaughter verdict. Put otherwise, it is not reasonably probable that the error affected the voluntary manslaughter verdict. It does not, therefore, enter into our assessment of whether the possible errors in instructing and returning a verdict on voluntary manslaughter were favorable to defendant.

Insofar as the instruction on voluntary manslaughter as an intentional killing in the heat of passion is concerned, any error was favorable to defendant. The evidence was sufficient to support the conviction of murder. The jury necessarily found that the killing was intentional which, ordinarily, would establish malice and thus murder. The prosecutor argued that evidence showed not just second, but first, degree murder. The jury nonetheless convicted defendant of voluntary manslaughter instead of murder. The dissenting justices reason that the verdict establishes that the jury did not find malice beyond a reasonable doubt. We disagree. Regardless of the jury's understanding of malice as an abstract concept, it did find beyond a reasonable doubt that defendant intended to kill Mee Nor. In doing so, it found malice as a matter of law. Contrary to the view of Justice Mosk, intoxication does not negate malice, which is established by intent to kill.

Defendant argues that the court should not presume that the jury which erred in finding heat of passion was nonetheless correct in finding intent. We do not assume that the jury found sufficient evidence of provocation and relied on that theory in returning the voluntary manslaughter verdict, however. It is equally or more likely that, under the instructions it was given, the jury erroneously believed that defendant's gross intoxication negated the malice element of murder.

Before instructing on murder and manslaughter, the court instructed: "The next instruction applies to murder first, murder second, and voluntary [*sic*]. . . . Under the law it is the general rule that no act committed by a person

---

[7]The three instructions told the jury: (1) "The crime of murder second requires the specific intent to unlawfully kill another human being with malice.

"The crime of voluntary manslaughter requires the specific intent to kill another human being."

(2) "Every person who unlawfully kills another human being without malice aforethought, but with an intent to kill, is guilty of voluntary manslaughter in violation of section 192."

(3) "In order to prove such crime, each of the following elements must be proved: One, a human being was killed; Two the killing was unlawful; and Three, the killing was done with intent to kill."

while in a state of voluntary intoxication is less criminal by reason of being in such condition. . . . However, there is an exception to this general rule, namely, where a specific intent or mental state is an essential element of a crime, in such event, you should consider the defendant's voluntary intoxication in your determination of whether the defendant possessed the required specific intent or mental state at the time of the commission of the alleged crime.

"Thus, in the crimes charged, namely, murder first, murder second and voluntary manslaughter, a necessary element is the existence in the mind of the defendant of a certain specific intent or mental state which is included in the definition of the crimes set forth elsewhere in these instructions.

"If the evidence shows that a defendant was intoxicated at the time of the alleged crime, you should consider that fact in determining whether or not such defendant had such specific intent or mental state. If from all the evidence you have a reasonable doubt whether the defendant had such specific intent or mental state, you must find that defendant did not have such specific intent or mental state."

Other instructions referred to malice as a "mental state" and told the jury that "[t]he distinction between murder and manslaughter is that murder requires malice, while manslaughter does not." Another instruction told the jury that malice could be absent even though the killing was intentional: "Every person who unlawfully kills another human being without malice aforethought, but with an intent to kill, is guilty of voluntary manslaughter." This instruction was one of three which emphasized that intent to kill was an element of voluntary manslaughter. Based on the instructions it was given the jury could reasonably conclude that, even if intent to kill was present, if voluntary intoxication was also present malice could be negated. Thus the jury was not led to believe that heat of passion was the only basis on which a voluntary manslaughter verdict could be returned. Since the evidence of gross intoxication was substantial, while evidence of heat of passion was lacking, we do not presume, as defendant suggests, that the jury erroneously concluded that the evidence of heat of passion was sufficient to negate malice. It is more likely the jury concluded that although the killing was intentional it was committed without malice because defendant was grossly intoxicated. Since intoxication could not and did not mitigate malice, the jury necessarily found beyond a reasonable doubt all of the facts necessary to a conviction of second degree murder.

When, as here, a jury necessarily finds all of the facts required for a conviction of murder, but convicts the defendant of voluntary manslaughter,

any error in that conviction is favorable to the defendant. The *Powell* criteria are satisfied in these circumstances. In finding that the killing was intentional, the jury indisputably found all of the facts necessary to establish second degree murder. The jury was instructed that intent to kill is an element of voluntary manslaughter. Under section 188 this intent to kill is sufficient to establish malice. Thus, the jury necessarily found an unlawful killing of a human being in which malice aforethought was present unless malice was negated by heat of passion or, under the instructions given, by voluntary intoxication. Therefore, assuming as we do that there was insufficient evidence of heat of passion to negate malice, defendant was "convicted of a lesser offense than the one of which he is guilty . . . according to that view of the evidence which, it indisputably appears, the trier of fact accepted." (*Powell, supra,* 34 Cal.2d at p. 206.) He may not "invoke reversal on an error which is favorable to him." (*Id.* at p. 205.)

Numerous decisions of other state courts also recognize the propriety of sustaining a conviction of voluntary manslaughter notwithstanding the absence of heat of passion when the evidence supports a conviction of murder. (See *Jimmerson* v. *State* (1925) 169 Ark. 353, 354 [275 S.W. 662, 663] ["Not being accidental, it must have been, under the facts, murder in the first degree; so that the defendant was not prejudiced by a verdict for a lower offense . . . ."]; *Commonwealth* v. *Harry* (1970) 437 Pa. 532, 535 [264 A.2d 402, 404] [" 'It has long been established that under an indictment for murder, a jury may return a verdict of voluntary manslaughter, though the evidence is insufficient to show passion or provocation, where the record discloses that defendant properly could have been convicted of murder.' "]; *State* v. *Vega* (1979) 40 N.C.App. 326, 333-334 [253 S.E.2d 94, 98-99] ["[A]s a matter of law adequate provocation could not be found to exist so as to justify submission of voluntary manslaughter . . . . [¶] . . . The trial court gave the jury an opportunity which legally they should not have had, to find defendant guilty of a lesser offense. Having been found guilty of a lesser included offense not raised by the evidence, defendant could not have been prejudiced by its submission. The error was manifestly favorable to the defendant and is not reversible."]; *Patrick* v. *State* (1969) 245 Ark. 923, 924 [436 S.W.2d 275, 276] ["[T]he accused cannot complain of such a charge [voluntary manslaughter in the absence of proof of heat of passion] if the proof would have supported a finding that he was guilty of a higher degree of homicide than that for which he was convicted."]; *O'Conner* v. *State* (1980) 272 Ind. 460, 467 [399 N.E.2d 364, 369] ["[I]n *McDonald* v. *State* (1976) 264 Ind. 477, 483, 346 N.E. 2d 569, 574, this Court stated: '(I)f sufficient evidence is presented to the jury by which it could find murder in the first or second degree, the jury may also return a verdict of guilty of voluntary manslaughter, notwithstanding the absence of proof of "sudden

heat." ' "]; *State* v. *Heald* (Me. 1972) 292 A.2d 200, 201 ["[A] defendant cannot be heard to complain of an error which works to his advantage. He is not thereby prejudiced. [Citations.] . . . 'If, for some reason satisfactory to them (the jury), they mistakenly believe that an accused is not guilty of the higher grade of offense charged, and find him guilty of a lesser grade, it is difficult to see how the mitigation is harmful to the accused.' "]; *State* v. *Perry* (1907) 78 S.C. 184, 185 [59 S.E. 851, 852] ["There was testimony tending to show that the defendant was guilty of murder. Therefore he has no just cause to complain that the jury took a merciful view of his case, and simply found him guilty of manslaughter."]; *State* v. *Ellis* (1950) 70 Idaho 417, 420 [219 P.2d 953, 954] [" '[U]pon a charge of murder in the first degree, the jury may find a defendant guilty of manslaughter, even though there is no evidence to show the lesser rather than the greater crime.' "].)

Nothing in *Jackson* v. *Virginia* (1979) 443 U.S. 307 [99 S.Ct. 2781, 61 L.Ed.2d 560] (*Jackson*) suggests that the *Powell* rule is not fully consistent with federal due process demands. That opinion reaffirms the due-process-based standard of proof beyond a reasonable doubt of every element of a criminal offense, a standard established by the court earlier in *In re Winship* (1970) 397 U.S. 358 [90 S.Ct. 1068, 25 L.Ed.2d 368] (*Winship*). The *Jackson* court did not have before it any question related to the one we address here —whether a judgment of conviction of voluntary manslaughter may be affirmed in the absence of evidence of provocation on the ground that the jury, on sufficient evidence, necessarily found beyond a reasonable doubt all of the facts necessary to a conviction of murder. Since *Jackson* did no more than apply the 1970 *Winship* standard the decision did not, as the dissent of Justice Mosk suggests, render the *Powell* rule one of "dubious vitality." (Dis. opn. of Mosk, J., *post*, at p. 77.) As shown above, variations of the *Powell* rule have continued to be applied by our sister states long after *Winship*. We therefore reject the argument that the voluntary manslaughter verdict in this case may not stand in the absence of evidence of provocation.

IV

DISPOSITION

The judgment of the Court of Appeal is reversed.

George, C. J., and Chin, J., concurred.

**BROWN, J.,** Concurring.—I agree that defendant's voluntary manslaughter conviction should be affirmed. I write separately because my analysis of the issues presented differs from that set out in the plurality opinion.

I

I begin with an examination of the jury's voluntary manslaughter verdict. Although the plurality declines to decide the issue (plur. opn., *ante*, at p. 60), the jury's verdict is clearly supported by the evidence. As this court recently explained in *People* v. *Breverman* (1998) 19 Cal.4th 142 [77 Cal.Rptr.2d 870, 960 P.2d 1094] (*Breverman*), "[b]ecause heat of passion . . . reduce[s] an intentional, unlawful killing from murder to voluntary manslaughter by *negating the element of malice* that *otherwise inheres* in such a homicide [citation], voluntary manslaughter of [this] form[] is considered a lesser necessarily included offense of intentional murder [citation]." (*Id.* at p. 154, original italics, fn. omitted.) " 'Under California law, a lesser offense is necessarily included in a greater offense if . . . the greater *cannot be committed without also committing the lesser.*' [Citation.]" (*Id.* at p. 154, fn. 5, italics added.) Thus, by definition, if the evidence is sufficient for a jury to have convicted of the greater offense (here, second degree murder), which everyone agrees that it was (see plur. opn., *ante*, at pp. 52, 63; see also dis. opn. of Mosk, J., *post*, at pp. 76, 78), it is *necessarily* sufficient for a jury to have convicted of the lesser included offense (here, voluntary manslaughter).

Stated somewhat more generally, although a trial court should not instruct on a lesser included offense "when there is no evidence that the offense was less than that charged" (*Breverman, supra,* 19 Cal.4th at p. 154), it *does not* follow that if a trial court nonetheless instructs and a jury nonetheless convicts, the conviction of the lesser included offense should be reversed for insufficient evidence. To the contrary, because evidence of the greater offense was sufficient, evidence of the lesser included offense is *necessarily* sufficient.

An examination of the factual record and the instructions given to the jury in this case leads to the same conclusion. Pursuant to CALJIC No. 8.50, the jury was instructed as follows: "To establish that a killing is murder and not manslaughter, the burden is on the People to prove beyond a reasonable doubt each of the elements of murder and that the act which caused the death was not done in the heat of passion or upon a sudden quarrel."[1] Pursuant to CALJIC No. 8.72, the jury was also instructed as follows: "If you are

---

[1]CALJIC No. 8.50 is based on the United States Supreme Court's decision in *Mullaney* v. *Wilbur* (1975) 421 U.S. 684 [95 S.Ct. 1881, 44 L.Ed.2d 508] (*Mullaney*). (See com. to CALJIC No. 8.50 (6th ed. 1996) p. 437.) In *Mullaney*, the high court held that "the Due Process Clause requires the prosecution to prove beyond a reasonable doubt the absence of the heat of passion on sudden provocation when the issue is properly presented in a homicide case." (421 U.S. at p. 704 [95 S.Ct. at p. 1892].) This court has yet to address whether the *Mullaney* holding governs California's statutory scheme proscribing unlawful homicides. (See *Breverman, supra,* 19 Cal.4th at p. 170, fn. 19 [declining to address the issue]; see also *id.* at

satisfied beyond a reasonable doubt that the killing was unlawful but you have a reasonable doubt whether the crime is murder or manslaughter, you must give the defendant the benefit of such doubt and find it to be manslaughter rather than murder." Here, as the Court of Appeal observed, "[w]hile defendant was clearly provoked, there is no evidence in this record upon which the trier of fact could rationally assess whether the provocation was sufficient to cause the average person to have acted similarly."[2] Viewed in this light, the jury's voluntary manslaughter verdict reflects nothing more than its conclusion that *the prosecution* failed to carry *its* assigned burden of *negating* heat of passion beyond a reasonable doubt.[3]

## II

Nor do the involuntary manslaughter instructions given to the jury provide a basis for reversing defendant's voluntary manslaughter conviction. The plurality holds that the trial court erred when it failed to instruct sua sponte on a misdemeanor manslaughter theory of involuntary manslaughter. (Plur. opn., *ante*, at pp. 60-61.) According to the plurality, such instructions were warranted because "when defendant used his gun in the quarrel with [his wife] he violated [Penal Code] section 417, subdivision (a)(2), committing the misdemeanor offense of 'brandishing' a weapon." (Plur. opn., *ante*, at p. 61.) The plurality then proceeds to deem the error harmless. (*Id.* at pp. 62-63.)

This case demonstrates, yet again, the pitfalls of requiring trial courts to instruct sua sponte on lesser included offenses. (See *Breverman, supra,* 19 Cal.4th at pp. 195-202 (dis. opn. of Brown, J.).) As a legal matter, requiring sua sponte instructions on involuntary manslaughter, on a misdemeanor manslaughter theory, on a "brandishing" subtheory, demands that our trial judges be psychic. And, as a factual matter, I question whether such instructions were warranted in this case. As noted above, a trial court should not

---

pp. 201-202, fn. 4 (dis. opn. of Brown, J.) [same].) I express no opinion on that question here. For the present purposes, it is sufficient to note that the instruction requiring the prosecution to negate heat of passion beyond a reasonable doubt inured to defendant's benefit.

 [2]Defendant's daughter testified that she saw her parents arguing and pushing each other, but that she could not hear what they were saying.

 [3]The plurality cites *People* v. *Williams* (1969) 71 Cal.2d 614, 624 [79 Cal.Rptr. 65, 456 P.2d 633] (*Williams*), for the proposition that "[a]dequate provocation and heat of passion must be affirmatively demonstrated." (Plur. opn., *ante,* at p. 60.) This proposition is based on *Williams*'s statement that "[m]alice is presumed and the burden is on [*defendant*] 'to raise a reasonable doubt in the minds of the jurors that malice was present.' [Citations.]" (*Williams, supra,* 71 Cal.2d at p. 624.) Similarly, Justice Mosk's dissenting opinion cites *Williams* and other decisions of this court for the proposition that provocation is an element of voluntary manslaughter. (See dis. opn. of Mosk, J., *post,* at p. 75, fn. 2.) We have yet to reconcile these decisions with the United States Supreme Court's decision in *Mullaney.* (See *ante,* fn. 1.)

instruct on a lesser included offense "when there is no evidence that the offense was less than that charged." (*Breverman, supra,* 19 Cal.4th at p. 154.) Here, it is doubtful whether a rational jury could have found that brandishing—and only brandishing—occurred. It appears that at a bare minimum, when defendant used his gun during the quarrel with his wife, he committed felony assault. (Cf. *People* v. *Lipscomb* (1993) 17 Cal.App.4th 564, 569-570 [21 Cal.Rptr.2d 445].) Under these circumstances, I would not require the trial court to have instructed sua sponte on the misdemeanor manslaughter theory of involuntary manslaughter.[4]

III

For the reasons discussed above, I agree that defendant's voluntary manslaughter conviction should be affirmed.

**MOSK, J.**—I dissent.

After trial in the superior court, a jury returned a verdict finding defendant guilty of the voluntary manslaughter of his wife and also made a finding that he personally used a firearm therein. The superior court rendered a judgment convicting and sentencing him accordingly.

The Court of Appeal reversed. As defendant had claimed, it concluded that the jury's verdict finding him guilty of voluntary manslaughter was not supported by sufficient evidence in violation of the due process clause of the Fourteenth Amendment to the United States Constitution as construed in *Jackson* v. *Virginia* (1979) 443 U.S. 307 [99 S.Ct. 2781, 61 L.Ed.2d 560]. It then remanded the cause to the superior court with directions to render a judgment convicting defendant of involuntary manslaughter and sentencing him therefor.

Although it was without any ground on which to order review, this court nevertheless chose to intervene, apparently in order to do what it deemed to

---

[4]Having concluded that sua sponte instructions were required, the plurality goes on to deem the failure to so instruct harmless. (Plur. opn., *ante,* at pp. 62-63.) The plurality's harmless error analysis is based primarily on the fact the jury convicted defendant of voluntary manslaughter, a greater offense of involuntary manslaughter. (See *id.* at p. 63 ["The jury had been instructed three times that it must find intent to kill in order to return a verdict of voluntary manslaughter. The evidence supported such a finding. We conclude on that basis that the error in failing to instruct on misdemeanor manslaughter was not prejudicial." (Fn. omitted.)].) In other words, the failure to instruct on the lesser included offense was harmless because the jury convicted defendant of a greater offense. Once again, "I wonder why, if the sua sponte instruction rule is as important as some of our prior cases seem to say, we have now made the failure to instruct on lesser included offenses all but harmless per se. [Citation.]" (*Breverman, supra,* 19 Cal.4th at p. 195, fn. 1 (dis. opn. of Brown, J.).)

be substantial justice. Regrettably, in reversing the Court of Appeal's judgment today, it has done the opposite.

## I

Murder is the "unlawful killing of a human being . . . with malice aforethought." (Pen. Code, § 187, subd. (a).) Malice aforethought "may be express or implied. It is express when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature. It is implied, when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart." (*Id.*, § 188.) Murder is "of the first degree" if it is "perpetrated . . . by any . . . kind of willful, deliberate, and premeditated killing," including killing by specified means, or if it is "committed in the perpetration of, or attempt to perpetrate," specified felonies. (*Id.*, § 189.) Murder is "of the second degree" if it is not of the first (*ibid.*), which means that it is simply an unlawful killing with malice aforethought.

Manslaughter is the "unlawful killing of a human being without malice" aforethought. (Pen. Code, § 192.) Manslaughter is "[v]oluntary" if it is perpetrated "upon a sudden quarrel or heat of passion" (*id.*, § 192, subd. (a)) following provocation adequate to arouse a reasonable person (e.g., *People v. Valentine* (1946) 28 Cal.2d 121, 136-144 [169 P.2d 1])—in other words, if it is perpetrated upon "adequate provocation" (e.g., *People v. Rhinehart* (1973) 9 Cal.3d 139, 154 [107 Cal.Rptr. 34, 507 P.2d 642], disapproved on another point, *People v. Bolton* (1979) 23 Cal.3d 208, 213-214 [152 Cal.Rptr. 141, 589 P.2d 396]; *People v. Williams* (1969) 71 Cal.2d 614, 624 [79 Cal.Rptr. 65, 456 P.2d 633]) or, simply, upon "provocation" (e.g., *People v. Jackson* (1980) 28 Cal.3d 264, 305 [168 Cal.Rptr. 603, 618 P.2d 149] (plur. opn.); *People v. Morse* (1969) 70 Cal.2d 711, 734 [76 Cal.Rptr. 391, 452 P.2d 607]; 1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) Crimes Against the Person, § 512, p. 579). Manslaughter is "[i]nvoluntary" if it is perpetrated (other than in the driving of a vehicle) "in the commission of an unlawful act, not amounting to a felony" (Pen. Code, § 192, subd. (b))—briefly, in the course of a misdemeanor—or "in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection" (*ibid.*)—in short, as a result of what is termed "criminal negligence."[1]

---

[1] As in *People v. Breverman* (1998) 19 Cal.4th 142 [77 Cal.Rptr.2d 870, 960 P.2d 1094], I must again "decline to consider, in detail and in depth, the relationship between murder and manslaughter . . . ." (*Id.* at p. 184, fn. 1 (dis. opn. of Mosk, J.).) Although the issue is indeed implicated here, it is not adequately presented. Its resolution will depend on answers to

## II

At the trial of this cause, the evidence introduced by the People and by defendant himself showed, virtually beyond dispute, that the "conduct/result" element common to first and second degree murder and voluntary and involuntary manslaughter was present: As defendant was brandishing a handgun in his wife's face, he shot and killed her, and did so unlawfully. But as for the "mental" element peculiar to each offense, it was otherwise. For defendant's state of mind at the time of the incident was difficult to assess. What was clear was that he was then so profoundly intoxicated as to approach unconsciousness, coma, and even death. An expert so testified. What was also clear was that he had not been provoked. There was simply no direct or even circumstantial evidence that showed or even suggested that he had been confronted with any word or deed, on the part of his wife or anyone else, that would have been adequate to arouse a reasonable person to do what he did. Unsurprisingly, the prosecutor did not argue in favor of voluntary manslaughter on any theory, but, quite the contrary, argued against it without qualification. So too did defense counsel.

In its charge to the jury, the superior court defined murder as the unlawful killing of a human being with malice aforethought, and defined malice aforethought as "either express or implied": it is "express" when "there is manifested an intention unlawfully to kill a human being"; it is "implied" when (1) the "killing resulted from an intentional act," (2) the "natural consequences of the act are dangerous to human life," and (3) the "act was deliberately performed with knowledge of the danger to, and with conscious disregard for, human life." It instructed on first degree murder, by premeditation and deliberation but not in the perpetration of a felony. It also

questions such as these: Is malice aforethought "negate[d]" by provocation? (*People* v. *Saille* (1991) 54 Cal.3d 1103, 1114 [2 Cal.Rptr.2d 364, 820 P.2d 588].) Or is it simply defined so as to exclude it from its scope? (See Pen. Code, § 188 [defining malice aforethought in its express form as an intent to kill that is "deliberate," i.e., not arising upon provocation; similarly defining malice aforethought in its implied form, in pertinent part, as a mental state not arising upon provocation].) Is manslaughter an unlawful killing without malice aforethought in the sense of one *without any mental state*? Or is it an unlawful killing *with some mental state*? If so, what mental state? How, if at all, is it related to malice aforethought? The answers to such questions will allow us to rationalize the law in this area. We shall no longer be compelled to treat voluntary manslaughter as a "lesser *included* offense" of murder (see conc. opn. of Brown, J., *ante*, at p. 67), even though, as commonly understood, it is a "lesser *including* offense" (*People* v. *Breverman, supra*, 19 Cal.4th at p. 189, fn. 4, italics in original (dis. opn. of Kennard, J.); accord, *id.* at p. 183 (dis. opn. of Mosk, J.)). Neither shall we any longer be compelled to speak of murder's unlawful-killing-*with-malice-aforethought* and voluntary manslaughter's unlawful-killing-*without-malice-aforethought* as we must under the common understanding (see dis. opn. of Kennard, J., *post*, at pp. 80-81)—the former entailing *both* the presence of malice aforethought itself *and* the absence of provocation, the latter entailing *either* the absence of malice aforethought itself *or* the presence of provocation. For all this, however, we must await another day.

instructed on second degree murder, specifically via implied malice afore-thought and not express.

In addition, the superior court defined manslaughter as the unlawful killing of a human being without malice aforethought. It implied that malice aforethought might be absent if the killing occurred during intoxication. In spite of the absence of evidence introduced by either the People or defend-ant, and in the face of argument to the contrary presented by both the prosecutor and defense counsel, it stated that malice aforethought *might be deemed* to be absent "if the killing occurred . . . upon a sudden quarrel or heat of passion" following "provocation . . . of such character and degree as naturally would excite or arouse" such a state of affairs. It also stated that malice aforethought *had to be deemed* to be absent unless the People proved beyond a reasonable doubt that the killing did not occur under circumstances of this sort. Again, in spite of the absence of evidence, and in the face of argument to the contrary, it instructed—erroneously—on voluntary man-slaughter. It stated that the offense required that (1) a "human being was killed," (2) the "killing was unlawful," and (3) the "killing was done with the intent to kill." It implied that the offense required that the "killing occurred . . . upon a sudden quarrel or heat of passion" following "provocation . . . of such character and degree as naturally would excite or arouse" such a state of affairs. It stated that the People had to prove beyond a reasonable doubt that the killing did not occur under circumstances of this sort. It also instructed on involuntary manslaughter. It stated that the offense required that (1) a "human being was killed," and (2) the "killing was unlawful." It instructed on the offense—erroneously—only as a result of criminal negli-gence and not also in the course of a misdemeanor, such as brandishing a firearm (Pen. Code, § 417, subd. (a)(2)), inasmuch as it stated only that a "killing is unlawful . . . if it occurred" "[i]n the commission of an act ordinarily lawful, which involves a high degree of risk of death or great bodily harm, without due caution and circumspection."

On the first day of its deliberations, the jury requested an examination of certain evidence reflective of the setting and surroundings of the killing. The superior court granted what it sought.

On the second day, the jury requested a rereading of the testimony of the expert that defendant was so profoundly intoxicated at the time of the incident as to approach unconsciousness, coma, and even death. Again, the superior court granted what it sought.

On the third and last day, the jury returned a verdict finding defendant not guilty of first degree murder and then one finding him not guilty of second

degree murder. In so doing, under the instructions given, it necessarily found that there was at least a reasonable doubt about malice aforethought—which meant that there was at least a reasonable doubt about malice aforethought *both* in its express form, which entailed intent to kill, *and* in its implied form, which involved conscious disregard for human life. After it returned its not guilty verdict on first degree murder, it informed the superior court that it was then "unable to reach a unanimous verdict on" second degree murder. The superior court instructed that, "If you are satisfied beyond a reasonable doubt that the killing was unlawful but you have a reasonable doubt whether the crime is murder or manslaughter, you must give the defendant the benefit of such doubt and find it to be manslaughter rather than murder." Later, the jury made requests relating to second degree murder via implied malice aforethought: What is the definition of "conscious disregard for human life"? What kind of act is required? The latter request the superior court granted, essentially paraphrasing one of the instructions that it had given. The former request it refused: "You must use your common sense to arrive at the definition of this term." In making its requests, the jury revealed that it could not agree whether the People had proved beyond a reasonable doubt that defendant harbored malice aforethought in its implied form because of his profound intoxication. It did *not* reveal any concern that they might have failed to prove to the same degree of certainty that he had not been provoked—with the result that he had to be deemed not to have harbored malice aforethought, either express or implied, whether he actually did so or not. It proceeded to return the verdict, referred to above, finding him not guilty of second degree murder. Finally, it returned a verdict finding him guilty of voluntary manslaughter, and also made a finding that he personally used a firearm therein. In so doing, under the instructions given, it necessarily found intent to kill and provocation beyond a reasonable doubt. As a consequence, it had no occasion to return any verdict on involuntary manslaughter.

## III

On defendant's claim, the Court of Appeal concluded that the jury's verdict finding him guilty of voluntary manslaughter was not supported by sufficient evidence in violation of the Fourteenth Amendment's due process clause.

Rightly so.

A jury's verdict finding a defendant guilty of an offense satisfies the Fourteenth Amendment's due process clause as construed in *Jackson* v. *Virginia, supra*, 443 U.S. 307, if, and only if, it is supported by sufficient

evidence. (*Id.* at pp. 313-324 [99 S.Ct. at pp. 2785-2792].) It is supported by sufficient evidence if, and only if, it is supported by evidence that would have allowed at least some rational trier of fact to have found each of the offense's elements beyond a reasonable doubt. (*Ibid.*)

In this cause, the jury's verdict finding defendant guilty of voluntary manslaughter was not supported by sufficient evidence because it was not supported by evidence that would have allowed any rational trier of fact to have found the element of provocation beyond a reasonable doubt. What was stated above bears restatement here: There was simply no direct or even circumstantial evidence that showed or even suggested that defendant had been confronted with any word or deed, on the part of his wife or anyone else, that would have been adequate to arouse a reasonable person to do what he did.

It is plain that a verdict by the jury finding defendant guilty of second degree murder, *had one been returned,* would have been supported by sufficient evidence. A rational trier of fact could have found each of the elements of this offense beyond a reasonable doubt. It could surely have determined to the requisite degree of certainty that there was an unlawful killing. So too as for malice aforethought, at least in its implied form.

It is also plain that a verdict by the jury finding defendant guilty of involuntary manslaughter, *had one been returned,* would have been supported by sufficient evidence. A rational trier of fact could have found each of the elements of this offense beyond a reasonable doubt. As stated, it could surely have determined to the requisite degree of certainty that there was an unlawful killing. Likewise for its occurrence as a result of criminal negligence or in the course of a misdemeanor, to wit, brandishing a firearm.

But it is just as plain that the jury's verdict finding defendant guilty of voluntary manslaughter—the verdict that it did in fact return—was *not* supported by sufficient evidence. Without any evidence whatsoever to rely on, no rational trier of fact could have found the element of provocation.

IV

The plurality practically ignore the Court of Appeal's conclusion that the jury's verdict finding defendant guilty of voluntary manslaughter was not supported by sufficient evidence in violation of the Fourteenth Amendment's due process clause. They likewise practically ignore defendant's claim to

that effect—a point that he raised below, and one that he has not abandoned here.[2]

The reason for the plurality's virtual omission is not hard to guess. Any attempt to reject the Court of Appeal's conclusion or to deny defendant's claim would not, and could not, succeed.

Instead of accepting reversal, which is assuredly mandated by the United States Constitution, the plurality strain after affirmance, which is supposedly mandated by the California Constitution.

Of course, if the California Constitution demanded affirmance and the United States Constitution demanded reversal, the conflict would have to be resolved in favor of the latter and against the former. The supremacy clause, which the federal document contains in its article VI, clause 2, and which the state document acknowledges in *its* article III, section 1, requires no less.

To affirm under the California Constitution, the plurality rely on *People* v. *Powell* (1949) 34 Cal.2d 196 [208 P.2d 974].

In *Powell*, we held that a defendant is "precluded from complaining" on appeal that "he was convicted of a lesser offense than the one of which he is guilty *according to undisputed evidence, or according to that view of the evidence which, it indisputably appears, the trier of fact accepted.*" (*People* v. *Powell, supra*, 34 Cal.2d at p. 206, italics added.)

Under the rule of *Powell*, defendant is *not* precluded from complaining of his conviction for voluntary manslaughter.

For it is simply not the case that defendant is guilty of first or even second degree murder "according to undisputed evidence." (*People* v. *Powell, supra*, 34 Cal.2d at p. 206.) The evidence was, manifestly, disputed and disputable. The plurality do not claim otherwise.

Neither is it the case that defendant is guilty of first or even second degree murder "according to that view of the evidence which, it indisputably

---

[2]The plurality say that "[i]t is unnecessary to resolve in this case" the issue whether provocation is an element of voluntary manslaughter. (Plur. opn., *ante*, at p. 52, fn. 2.) True. The question has already been answered—in the affirmative. (E.g., *People* v. *Jackson, supra*, 28 Cal.3d at p. 305 (plur. opn.); *People* v. *Rhinehart, supra*, 9 Cal.3d at p. 154; *People* v. *Williams, supra*, 71 Cal.2d at p. 624; *People* v. *Morse, supra*, 70 Cal.2d at p. 734; 1 Witkin & Epstein, Cal. Criminal Law, *supra*, Crimes Against the Person, § 512, p. 579.)

The plurality similarly say that it is unnecessary to resolve in this case the issue whether the element of provocation was supported by sufficient evidence. Not true. This question must be answered—in the negative. The plurality all but concede the point.

appears, the trier of fact accepted." (*People* v. *Powell, supra,* 34 Cal.2d at p. 206.) The plurality claim otherwise. I should not have to emphasize this fact, but evidently I must: The jury returned a verdict finding defendant *not guilty* of first degree murder. It also returned a verdict finding him *not guilty* of second degree murder. It thereby showed "indisputably" that the "view of the evidence" that it "accepted" prevented it from finding him guilty of either offense.

The plurality assert that the evidence was sufficient for a verdict by the jury finding defendant guilty of second degree murder. That is true. But of no import.

The plurality then assert that the jury "necessarily" found that defendant was indeed guilty of second degree murder, or at least that it "necessarily" found each of its elements. (Plur. opn., *ante,* at p. 52.) That is false.

The plurality's major premise is that malice aforethought in its express form entails intent to kill. It will be accepted for purposes of discussion.

The plurality's minor premise is that the jury "necessarily" found malice aforethought in its express form by returning its verdict finding defendant guilty of voluntary manslaughter—which, under the instructions given, implies a finding of intent to kill beyond a reasonable doubt. It must be rejected.

The plurality altogether disregard the jury's verdicts finding defendant not guilty of first or second degree murder—which, under the instructions given, imply a finding, subject only to a single qualification, of at least a reasonable doubt about intent to kill.

For the first- and second-degree-murder not guilty verdicts imply a finding of at least a reasonable doubt about malice aforethought. A finding of at least a reasonable doubt about malice aforethought implies, in turn, a finding of at least a reasonable doubt about both its express form and its implied form. A finding of at least a reasonable doubt about malice aforethought's implied form implies, in its turn, a finding of at least a reasonable doubt about what that form involves, namely, conscious disregard for human life. Similarly—and decisively here—a finding of at least a reasonable doubt about malice aforethought's express form implies, in its turn, a finding of at least a reasonable doubt about what that form entails, namely, intent to kill.

The qualification referred to above is this: As a matter of logic, the first- and second-degree-murder not guilty verdicts might perhaps simply imply a

finding that the People did not prove the absence of provocation beyond a reasonable doubt, with the result that defendant had to be deemed not to have harbored malice aforethought, either express or implied, whether he actually did so or not. As a matter of fact, however, the verdicts in question do not so imply. The plurality themselves effectively admit that it was not "likely" that provocation was even at issue. (Plur. opn., *ante*, at p. 64.) Reasonably so. For, as both the prosecutor and defense counsel argued, neither the People nor defendant introduced any direct or even circumstantial evidence that showed or even suggested that defendant had been confronted with any word or deed, on the part of his wife or anyone else, that would have been adequate to arouse a reasonable person to do what he did. From all that appears, the jury did not speculate otherwise. As explained above, it could not agree whether the People had proved beyond a reasonable doubt that defendant harbored malice aforethought in its implied form because of his profound intoxication. It was *not* concerned that they might have failed to prove to the same degree of certainty that he had not been provoked.

Not only do the plurality rely on the rule of *Powell* to affirm under the California Constitution, they also rely on a rule that they derive from the common law of various jurisdictions. (See generally Annot., Propriety of Manslaughter Conviction in Prosecution for Murder, Absent Proof of Necessary Elements of Manslaughter (1983) 19 A.L.R.4th 861, 864-912.)

At the outset, we must note that this rule, which dispenses with the requirement of sufficient evidence for each of the elements of an offense as a matter of common law (see Annot., Propriety of Manslaughter Conviction in Prosecution for Murder, Absent Proof of Necessary Elements of Manslaughter, *supra*, 19 A.L.R.4th at pp. 864-912), arose prior to, and therefore apart from, *Jackson* v. *Virginia*, *supra*, 443 U.S. 307, which imposes such a requirement under the Fourteenth Amendment's due process clause (see *id.* at pp. 313-324 [99 S.Ct. at pp. 2785-2792]). We must also note that the rule—to understate the matter—is now of dubious vitality.

That put aside, the rule operates in the following situation: At a defendant's trial, there was sufficient evidence of each of the elements of a greater offense; by contrast, there was not sufficient evidence of at least one of the elements of a lesser offense; he was convicted of the lesser offense and not the greater. On appeal, he is not allowed to complain of the result, because the result (it is supposed) was necessarily favorable to his interests: he could have been convicted of the greater offense instead of the lesser.

In a different situation, the rule does not operate: At a different defendant's trial, there was sufficient evidence of each of the elements of a greater

offense; by contrast, there was not sufficient evidence of at least one of the elements of a lesser offense; there was, however, sufficient evidence of each of the elements of an even lesser, or "least," offense; he was convicted of the lesser offense and not the greater or the least. On appeal, he is allowed to complain of the result, because the result was not necessarily favorable to his interests: although he could have been convicted of the greater offense instead of the lesser, he could also have been convicted of the least.

This cause presents the latter situation and not the former. At defendant's trial, there was sufficient evidence of each of the elements of second degree murder; by contrast, there was not sufficient evidence of at least one element of voluntary manslaughter, specifically, provocation; there was, however, sufficient evidence of each of the elements of involuntary manslaughter; he was convicted of voluntary manslaughter and not second degree murder or involuntary manslaughter. On appeal, he is allowed to complain of the result, because the result was not necessarily favorable to his interests: although he could have been convicted of second degree murder instead of voluntary manslaughter, he could also have been convicted of involuntary manslaughter.

Over a century ago, we held that a "defendant cannot complain where the determination of his case was more favorable to him than the evidence warranted." (*People* v. *Muhlner* (1896) 115 Cal. 303, 306 [47 P. 128].)

But neither before nor since had we ever even suggested that a defendant could not complain where the determination might have been *less favorable*. The plurality are wrong to do so now.[3]

## V

For the reasons stated above, I would affirm the judgment of the Court of Appeal.

Werdegar, J., concurred.

---

[3]Because of the result that I reach, I need not, and do not, proceed to determine whether the superior court erred reversibly when it instructed on involuntary manslaughter only as a result of criminal negligence and not also in the course of a misdemeanor. In concluding against reversal, the plurality claim, in substance, that the superior court's instructions did not exclude involuntary manslaughter in the course of a misdemeanor as a matter of law. Perhaps so. But they simply did not include it as a matter of fact. Indeed, to the jury, made up as it was of laypersons, they must likely have suggested the opposite. For, by stating that involuntary manslaughter covers an unlawful killing as a result of criminal negligence in the form of the commission, "without due caution and circumspection," of an "ordinarily *lawful*" act that "involves a high degree of risk of death or great bodily harm" (italics added), they implied that some even more serious offense covers an unlawful killing in the course of a *misdemeanor*, which, by definition, is never a lawful act, "ordinarily" or otherwise.

**KENNARD, J.,** Dissenting.—While grossly intoxicated, defendant shot and killed his wife during an argument. A jury convicted him of voluntary manslaughter while acquitting him of murder. For this or any other criminal conviction to satisfy the due process clause of the United States Constitution, there must be evidence in the record sufficient for a rational jury to find beyond a reasonable doubt the existence of every element of the crime. Defendant contends that his conviction for voluntary manslaughter is defective under this test because there is no evidence from which a jury could reasonably conclude that he acted in the heat of passion upon adequate provocation. The plurality holds that, even if correct, this contention does not entitle defendant to relief. It reasons that the jury necessarily found facts establishing all the elements of the greater offense of murder (an unlawful killing with malice aforethought) and therefore any error in the voluntary manslaughter verdict was favorable to defendant.

The jury, however, did not necessarily find all of the elements of murder, for in acquitting defendant of murder it necessarily rejected the element of malice aforethought, the element of murder that is not present in voluntary manslaughter. I conclude nevertheless that defendant's contention fails on the merits for a different reason. The voluntary manslaughter verdict is sound because the *presence* of heat of passion was not an element of voluntary manslaughter that needed to be proven before defendant could be validly convicted of that crime. Instead, the prosecution here needed to prove beyond a reasonable doubt the *absence* of heat of passion before the jury could find that an intentional, unlawful killing was murder rather than voluntary manslaughter. In convicting defendant of voluntary manslaughter, the jury was expressing its view that the killing was unlawful and intentional but that the prosecution had failed to convince it beyond a reasonable doubt that defendant had not acted in the heat of passion.

Defendant raises as a separate claim of error the trial court's failure to instruct the jury on the lesser offense of involuntary manslaughter committed in the course of committing a misdemeanor. A trial court must instruct the jury on every lesser included offense supported by the evidence; here, the evidence adequately supported the misdemeanor theory of involuntary manslaughter, and the jury should have been instructed on it. The plurality agrees the trial court erred in failing to so instruct but concludes the error was harmless. I disagree. Because there is a reasonable probability that if it had been so instructed the jury would have found defendant guilty of only involuntary manslaughter, the error is not harmless. For this separate reason, defendant's conviction is invalid, and I would reverse it.

I

I first address defendant's contention that his voluntary manslaughter conviction is constitutionally defective because on the evidence at trial a

rational jury could not find beyond a reasonable doubt that he acted in the heat of passion. Under the due process clause of the Fourteenth Amendment to the United States Constitution, it is the prosecution's burden in a criminal case to prove every element of a crime beyond a reasonable doubt. (*In re Winship* (1970) 397 U.S. 358 [90 S.Ct. 1068, 25 L.Ed.2d 368].) To meet this burden, the prosecution must introduce evidence sufficiently substantial to permit a rational trier of fact to find the defendant guilty beyond a reasonable doubt of each of the essential elements of the crime. (*People* v. *Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255]; see also *Jackson* v. *Virginia* (1979) 443 U.S. 307, 315-319 [99 S.Ct. 2781, 2786-2789, 61 L.Ed.2d 560].) I conclude defendant's claim lacks merit whether or not there was sufficient evidence of heat of passion.

In a recent case, I examined the elements of murder and voluntary manslaughter and the unique relationship between these two crimes:

"Murder is defined by statute as an 'unlawful killing' with 'malice aforethought.' (Pen. Code, § 187, subd. (a).) Voluntary manslaughter, on the other hand, is an 'unlawful killing' 'without malice' and 'upon a sudden quarrel or heat of passion' ([Pen. Code,] § 192), or upon a good faith but unreasonable belief in the need for self-defense (*People* v. *Barton* (1995) 12 Cal.4th 186, 199 [47 Cal.Rptr.2d 569, 906 P.2d 531]).

"For purposes of murder, malice may be express or implied. 'It is express when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature. It is implied, when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart.' ([Pen. Code,] § 188.) Malice is the intent to kill (express malice) or intent to do an act dangerous to human life with conscious disregard of its danger (implied malice); accordingly, murder is proven by showing an unlawful killing plus either the intent to kill or the intent to do a dangerous act with conscious disregard of its danger. (*People* v. *Saille* (1991) 54 Cal.3d 1103, 1114 [2 Cal.Rptr.2d 364, 820 P.2d 588] ['express malice and an intent unlawfully to kill are one and the same'], 1115; *People* v. *Swain* (1996) 12 Cal.4th 593, 601-603 [49 Cal.Rptr.2d 390, 909 P.2d 994].)" (*People* v. *Breverman* (1998) 19 Cal.4th 142, 188 [77 Cal.Rptr.2d 870, 960 P.2d 1094] (dis. opn. of Kennard, J.), fns. omitted.)

Malice is absent if the defendant did not act with either of the mental states used to define malice—the intent to kill or the intent to do an act dangerous to human life with conscious disregard of its danger. Even if one of these mental states is present, however, malice is nonetheless absent if in

addition the defendant acted in the heat of passion.[1] "[W]hen the intentional killing results from a sudden quarrel or heat of passion induced by adequate provocation," the killer lacks malice and the only crime committed is voluntary manslaughter. (*People* v. *Saille* (1991) 54 Cal.3d 1103, 1114 [2 Cal.Rptr.2d 364, 820 P.2d 588].) The presence of heat of passion establishes the absence of malice even when one of the mental states necessary for murder is present. "Given the manner in which California has structured the relationship between murder and voluntary manslaughter, the complete definition of malice is the intent to kill or the intent to do a dangerous act with conscious disregard of its danger *plus the absence of* both heat of passion and unreasonable self-defense." (*People* v. *Breverman, supra,* 19 Cal.4th at p. 189 (dis. opn. of Kennard, J.), italics original.)

Using the standard California criminal jury instructions, the trial court here instructed the jury it was the burden of the prosecution to prove beyond a reasonable doubt the *absence* of heat of passion in order for the jury to find the element of malice and return a verdict of murder. "To establish that a killing is murder other than felony-murder and not manslaughter, *the burden is on the People to prove beyond a reasonable doubt* each of the elements of murder and that *the act which caused the death was not done in the heat of passion or upon a sudden quarrel* or in the honest, even though unreasonable, belief in the necessity to defend against imminent peril to life or great bodily injury." (CALJIC No. 8.50 (5th ed. 1988), italics added, brackets omitted.)

The trial court also told the jury that the only elements of voluntary manslaughter were a killing that was unlawful and intentional.[2] (CALJIC No. 8.40, *supra.*) Thus, the jury was to return a verdict of voluntary manslaughter if it found an unlawful intentional killing but found that the prosecution had not proven beyond a reasonable doubt the absence of heat of passion. The jury was not required to find affirmative proof of the presence of heat of passion as an element of voluntary manslaughter. Finally, the court instructed the jury that if it had a reasonable doubt whether the crime was murder or voluntary manslaughter, it must give the defendant the benefit of such doubt and find the crime to be voluntary manslaughter rather than murder.[3] (CALJIC No. 8.72, *supra.*)

On the evidence here, a rational jury could have found that the prosecution had failed to carry its burden of proving the absence of heat of passion.

---

[1] I use the term "heat of passion" to refer to the statutory language "upon a sudden quarrel or heat of passion." (Pen. Code, § 192, subd. (a).)

[2] "In order to prove such crime [of voluntary manslaughter], each of the following elements must be proved: [¶] 1. A human being was killed, [¶] 2. The killing was unlawful, and, [¶] 3. The killing was done with the intent to kill." (CALJIC No. 8.40, *supra.*)

[3] "If you are satisfied beyond a reasonable doubt that the killing was unlawful but you have a reasonable doubt whether the crime is murder or manslaughter, you must give the defendant

There was no eyewitness testimony concerning the final minutes of the confrontation between defendant and his wife, the victim. The jury could have concluded that it simply did not know enough about what occurred in those final minutes to find beyond a reasonable doubt that defendant did not act in the heat of passion.

More fundamentally, as the trier of fact, it is for the jury to decide whether the evidence has proven beyond a reasonable doubt a particular element of a crime. (*United States* v. *Gaudin* (1995) 515 U.S. 506, 513 [115 S.Ct. 2310, 2315, 132 L.Ed.2d 444] [describing "the historical and constitutionally guaranteed right of criminal defendants to demand that the jury decide guilt or innocence on every issue"]; *id.* at pp. 522-523 [115 S.Ct. at p. 2320] ["The Constitution gives a criminal defendant the right to have a jury determine, beyond a reasonable doubt, his guilt of every element of the crime with which he is charged."].) No matter how overwhelming the evidence supporting the existence of a particular element may seem to a court, it is for the jury to decide whether the element has been proven sufficiently to dispel all reasonable doubt. (*Sullivan* v. *Louisiana* (1993) 508 U.S. 275, 277 [113 S.Ct. 2078, 2080, 124 L.Ed.2d 182] ["The [jury trial] right includes, of course, as its most important element, the right to have the jury, rather than the judge, reach the requisite finding of 'guilty.' "].) It is for this reason that the court may never direct a verdict of conviction in a criminal trial. (*Ibid.* ["Thus, although a judge may direct a verdict for the defendant if the evidence is legally insufficient to establish guilt, he may not direct a verdict for the State, no matter how overwhelming the evidence."].)

Here, the trial court instructed the jury that if it found that the prosecution had failed to carry its burden of proving the absence of heat of passion but also found that the killing was unlawful and intentional, it was to return a verdict of voluntary manslaughter. Because it is undisputed that there is sufficient evidence from which a rational jury could conclude that the killing was unlawful and intentional, there is sufficient evidence to support the jury's voluntary manslaughter verdict.[4]

## II

I now turn to the trial court's failure to instruct on involuntary manslaughter occurring in the course of committing a misdemeanor. There are two

---

the benefit of such doubt and find it to be manslaughter rather than murder." (CALJIC No. 8.72, *supra.*)

[4]The plurality theorizes that the jury necessarily found the malice element of murder in finding as part of its voluntary manslaughter verdict that defendant intended to kill. The plurality's theory founders on the fact that malice is not simply intent to kill, but the intent to kill in the absence of heat of passion. Thus, in finding intent to kill without finding the absence of heat of passion, the jury here did not find malice.

different circumstances in which a killing is involuntary manslaughter. First, a killing is involuntary manslaughter if it occurs because the defendant, without intending to kill, commits without due caution or circumspection an ordinarily lawful act that poses a high risk of death or great bodily harm. (Pen. Code, § 192, subd. (b).) The trial court here instructed the jury on this theory of involuntary manslaughter. Second, a killing is involuntary manslaughter if it occurs in the course of the defendant's commission of a misdemeanor or infraction that under the circumstances is dangerous to human life. (*Ibid.*) The trial court did not instruct the jury on this theory of involuntary manslaughter.

As the plurality concludes, it was error for the trial court to fail to instruct on the misdemeanor theory of involuntary manslaughter. A trial court must instruct, "sua sponte, on all theories of a lesser included offense which find substantial support in the evidence." (*People* v. *Breverman, supra*, 19 Cal.4th 142, 162.) Here, there was sufficient evidence from which the jury could have convicted defendant of involuntary manslaughter on a misdemeanor theory. Specifically, the jury could have reasonably concluded that when defendant shot and killed his wife he was committing the misdemeanor of brandishing a firearm (Pen. Code, § 417, subd. (a)(2)) under circumstances dangerous to human life.

This court has recently held that when a trial court erroneously fails to instruct on a lesser included offense the conviction must be reversed if there is a reasonable probability that the jury could have reached a different conclusion had it been properly instructed. (*People* v. *Breverman, supra*, 19 Cal.4th 142, 178.) Here, there is such a probability. Defendant was highly intoxicated and arguing with his wife when he shot her; there was no direct evidence that he intended to kill her or even that he intended to fire the gun. The jury spent three days deliberating over defendant's level of culpability for causing his wife's death. Having rejected murder, the jury's choice was between voluntary and involuntary manslaughter. Under the instructions given, however, the jury could reach a verdict of involuntary manslaughter only if it found that the killing occurred "[i]n the commission of an act *ordinarily lawful*, which involves a high degree of risk of death or great bodily harm, without due caution and circumspection." (Italics added.) The jury rejected the view that defendant's acts were merely lawful but dangerous ones in rejecting this theory of involuntary manslaughter. Had it been instructed on the misdemeanor theory of involuntary manslaughter, however, it could have easily and reasonably concluded that defendant killed his wife unintentionally in the course of committing, under circumstances dangerous to human life, the misdemeanor of brandishing a firearm. Accordingly, defendant's conviction should be reversed.

The plurality rejects this conclusion on the ground that defendant's conviction of the greater offense of voluntary manslaughter, and the jury's finding in the course of reaching that verdict that defendant intended to kill, makes it improbable that it would have convicted defendant of involuntary manslaughter on a misdemeanor theory. In *People* v. *Breverman, supra,* 19 Cal.4th 142, 178, footnote 25, however, this court pointed out the fallacy of reasoning from the fact that a jury found a defendant guilty of the elements of a greater offense to the conclusion that it would not have chosen to convict him of a lesser offense on which it was erroneously not instructed. "That the jury chose the greater over acquittal, and that the evidence technically permits conviction of the greater, does not resolve the question whether, 'after an examination of the entire cause, including the evidence' (Cal. Const., art. VI, § 13), it appears reasonably probable the jury would nonetheless have elected the lesser if given that choice." (*Ibid.*) After examining the entire cause in this case, I find that there is a reasonable probability that the jury would have convicted defendant of involuntary manslaughter.

## Conclusion

For the reasons given above, I conclude that there is substantial evidence to support the voluntary manslaughter verdict. The trial court's failure to instruct on the misdemeanor theory of the lesser included offense of involuntary manslaughter, however, was prejudicial error that requires reversal of defendant's conviction.

Appellant's petition for a rehearing was denied April 14, 1999. Mosk, J., Kennard, J., and Werdegar, J., were of the opinion that the petition should be granted.