## JIMMERSON v. STATE.

## Opinion delivered September 28, 1925.

1. HOMICIDE—VOLUNTARY MANSLAUGHTER—PROVOCATION.—Provocation on the part of the deceased is a necessary essential to the crime of voluntary manslaughter.

2. HOMICIDE—WHEN MURDER.—A killing which was not accidental and was caused by no provocation, *held*, under the evidence, to be murder in the first degree.

3. HOMICIDE—HARMLESS ERROR.—A finding that defendant was guilty of voluntary manslaughter when the evidence established his guilt of murder in the first degree was not prejudicial to him.

4. WITNESSES—CONTRADICTING ONE'S WITNESS ON GROUND OF SURPRISE.—Where the prosecution is surprised by a witness failing to testify to facts related by him to the grand jury, he may be asked whether he had not testified to certain facts before the grand jury, as a foundation to contradict him.

5. CRIMINAL LAW—OPINION OF WITNESS.—It was not improper to refuse to permit the defendant in a murder case to ask a witness whether he did not know that appellant was playing with deceased when he told her that he was going to kill her.

6. HOMICIDE—BURDEN OF PROVING INTENT.—It was not error to refuse to instruct the jury that the burden was on the State to prove that defendant intended to kill deceased; the statute placing the burden of proving circumstances of mitigation upon the defendant (Crawford & Moses' Dig. § 2342).

7. CRIMINAL LAW—PROOF OF VENUE.—Evidence *held* sufficient to establish the venue in a murder case.

Appeal from Woodruff Circuit Court, Central District; *E. D. Robertson*, Judge; affirmed.

*Elmo CarlLee*, for appellant.

*H. W. Applegate*, Attorney General, and *John L. Carter*, Assistant, for appellee.

HUMPHREYS, J. Appellant was indicted for murder in the first degree in the Circuit Court of Woodruff County, Central District, and convicted of voluntary manslaughter upon a trial of the cause. From the judgment of conviction, he has prosecuted an appeal to this court.

The testimony introduced by the State was to the effect that appellant had tried to go with and marry Allie Moore, and that when she refused, he threatened to kill

her; that, two or three days after making the threat, they, with others, were visiting at Beulah Woods' house on the Halloway place; that about four o'clock in the afternoon, Walter Brown, who had been hunting rabbits, came in and laid his gun down; that while the crowd was guessing riddles out of an almanac and laughing and talking, appellant arose and remarked to Allie Moore that he was going to kill her that evening, and with that remark picked up the gun and unbreeched it; that he was told by three different parties that the gun was loaded and not to be playing with it and the girl at the same time; that, with the gun in his hands, he stepped onto the porch where Allie was; in a few minutes, the gun was discharged, the load entering her head and killing her instantly; that, being called upon, appellant assisted in laying the girl down, and then ran away; that he returned early that night and claimed the gun was accidentally fired.

Appellant testified in his own behalf, claiming that, while he was unloading the gun, it accidentally went off and killed Allie Moore. He testified that he had never tried to go with her or marry her, and that the threats he made were made in a joke. He explained that the plunger in the gun was long, and for that reason he had to pull the trigger back to unload it, and, while doing so, the gun accidentally fired.

The record reflects that appellant and deceased were upon good terms, and that he had married another girl about a week before the killing occurred.

Zollie Moore, the father of deceased, testified that he supposed the killing occurred in the central district; that he almost knew it did.

George Barber identified a map exhibited to him as a map of Woodruff County, put out by the Woodruff County Bank of Augusta, upon which he had drawn the boundary line of the central district according to the description thereof in the act of the Legislature creating the district. He testified that, to the best of his knowledge, it was correct.

F. Lewis testified that the Halloway place, where the killing occurred, was within the boundary line of the central district, as represented by the map.

The first assignment of error insisted upon by appellant for a reversal of the judgment is the insufficiency of the evidence to support the verdict. It is true that the record contains no evidence showing provocation on the part of the deceased, which is a necessary essential to the crime of voluntary manslaughter; but the result reached by the jury amounted to a finding that the killing was not accidental. Not being accidental, it must have been, under the facts, murder in the first degree; so appellant was not prejudiced by a verdict for a lower offense.

The next assignment of error was the admission of testimony alleged to be incompetent. The testimony referred to was that of Octavius Duffy, a State witness, given in answer to the following query of the prosecuting attorney:

Q. "By way of refreshing your memory, I want to ask you if you didn't testify before the grand jury a short time ago, 'He was trying to get her to let him kiss her, and she wouldn't let him, and he got up and got a gun and said, 'I am going to kill you.' A. Yes, sir."

We think the question proper as laying a foundation to contradict the State's witness, who had surprised the prosecuting attorney in failing to testify to facts related by him to the grand jury. The object in asking the question was to ascertain whether the statement had been made to the grand jury, and, if so, whether it was true.

The next assignment of error was the refusal of the court to permit appellant to ask Walter Brown, on cross-examination, whether he did not know that appellant was playing with Allie Moore when he said, "I am going to kill you this evening." This question was improper because it called for a conclusion from the witness. The cross-examination should have been confined to what was said and done.

The next assignment of error was the refusal of the court to give appellant's requested instructions Nos. 1 and 2. The first was a peremptory instruction. It was properly refused because the testimony in the case warranted a submission of the issue of murder in the first degree to the jury for determination. The other was an instruction covering appellant's theory of an accidental killing, but it was erroneous in placing the burden upon the State to prove that appellant intended to kill the deceased. The killing was admitted; hence, under § 2342 of Crawford & Moses' Digest, the burden of proving circumstances of mitigation that excused the homicide devolved upon appellant.

The next assignment of error was the alleged failure to prove the venue. The venue was established with sufficient certainty by the testimony of Zollie Moore, George Barber, and F. Lewis, heretofore set out in this opinion.

No error appearing, the judgment is affirmed.