OPINION
This timely appeal arises from a bench trial where Appellant, James L. Layne, was convicted of voluntary manslaughter with a firearms specification and carrying a concealed weapon. For the following reasons, we affirm the judgment of the trial court.
At approximately 2:30 a.m. on March 26, 1995, Appellant shot and killed Louis Grimes at the victim's home on Oyster Road in Smith Township, Mahoning County, Ohio. A few hours prior to the shooting, Appellant and his girlfriend Sarah "Cookie" Montini and Tommy George and his girlfriend, Samona Porter, were at Munchies bar in nearby Alliance, Ohio. (Tr. 38). At some point during the evening, Montini left the bar and returned with a gun. She gave the weapon to Appellant, who was nervous that the bar was going to be robbed. (Tr. 356-357). Appellant tucked the gun into the back of his pants. (Tr. 357). Appellant's shirt and sportcoat concealed the gun while at the bar and at other times throughout the evening. (Tr. 36, 55, 63, 75, 305-306).
The two couples left the bar and the two women were dropped off at their respective homes. (Tr. 56, 278, 308). Appellant and George briefly returned to the bar, where Appellant ingested a line of cocaine. (Tr. 58). Appellant suggested that they go to obtain more cocaine from Grimes. (Tr. 58, 63). George dropped off Appellant at Grimes' home in the early morning hours of March 26, 1995. (Tr. 38, 69-70). Kathleen Cruise, Grimes' fiancee, was the only one at home at the time but she expected Grimes to return soon. (Tr. 73). Cruise testified that while waiting for Grimes to return, Appellant stated that no one was, "* * * going to leave here unless somebody got shot." (Tr. 74). She also told police that Appellant said he was going to kill Grimes when he returned. (Tr. 212). Grimes had not yet returned when George, now with Samona Porter, came to pick up Appellant. (Tr. 38, 76). As Appellant was getting into the car with George and Porter, Grimes returned. (Tr. 38, 367). Appellant approached Grimes and an argument ensued. (Tr. 80). Appellant pulled his gun and shot Grimes. (Tr. 80-81). Grimes died as a result of a gunshot wound to the head. (Tr. 12).
Appellant was apprehended shortly after the shooting. In a statement to police, Appellant said he went to Grimes' home to confront him regarding a sex act that occurred in the past between Grimes and Montini. (Tr. 198, 217). Apparently, in an exchange of sex for drugs, Montini had performed a sexual act on Grimes. (Tr. 222). Although Appellant had previously confronted Grimes about that incident and had apparently resolved the matter (Tr. 100-101, 219-221), according to an audio tape recording of the confession admitted into evidence as State's Exhibit 27 (Tr. 391, 413), Appellant stated he was tired of Grimes lying to him and was angered that Grimes was supplying Montini with drugs despite her efforts to cure her drug addiction.
On April 21, 1995, Appellant was indicted on one count of carrying a concealed weapon in violation of R.C. §2923.12(A)(D) with a physical harm specification and one count of aggravated murder in violation of R.C. § 2903.01(A)(C) with a firearm specification. The indictment contained the wrong name under the firearms specification only and a superseding indictment was issued on April 28, 1995 substituting Appellant's name.
A bench trial commenced on August 27, 1997 after which the court acquitted Appellant of aggravated murder but found him guilty of voluntary manslaughter with a firearm specification and of carrying a concealed weapon with a physical harm specification. In a judgment entry dated September 3, 1997, and filed on September 4, 1997, the court sentenced Appellant to concurrent indefinite terms of four to ten years for carrying a concealed weapon and five to twenty-five years on the voluntary manslaughter conviction. The court further ordered Appellant to serve three years actual incarceration on the firearms specification, to be served prior to and consecutive with the indefinite terms. Appellant filed his notice of appeal on September 3, 1997. Pursuant to App.R. 4(C), we treat Appellant's notice of appeal as filed immediately after the filing of the judgment entry imposing sentence. We will jointly address Appellant's first and third assignments of error as they involve similar analysis.
Appellant's first assignment of error alleges:
 "THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION FOR ACQUITTAL ON THE CHARGE OF AGGRAVATED MURDER WHEN THE EVIDENCE PRESENTED BY THE STATE WAS INSUFFICIENT TO SUSTAIN A CONVICTION."
Appellant's third assignment of error alleges:
 "THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION FOR ACQUITTAL WHEN THE EVIDENCE PRESENTED BY THE STATE WAS INSUFFICIENT TO SUSTAIN A CONVICTION OF CARRYING A CONCEALED WEAPON."
Appellant argues that the trial court should have granted his motions for directed verdict pursuant to Crim.R. 29(A). Appellant argues that the state did not produce sufficient evidence of each and every element on the charges of aggravated murder and carrying a concealed weapon. With respect to his first assignment of error, Appellant specifically charges that the state failed to produce sufficient evidence of prior calculation and design.
These assignments of error lack merit. Crim.R. 29 provides in part that:
 "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint if the evidence is insufficient to sustain a conviction of such offense or offenses."
When addressing a claim, of insufficient evidence, a reviewing court considers all probative evidence and the reasonable inferences to be drawn therefrom in a light most favorable to the prosecution and determines whether a rational trier of fact could have found all elements of the crime charged beyond a reasonable doubt. State v. Filiaggi (1999), 86 Ohio St.3d 230, 247 citingState v. Jenks (1991), 61 Ohio St.3d 259 and State v. Eley
(1978), 56 Ohio St.2d 169.
With respect to Appellant's first assignment of error, the version of R.C. § 2903.01 in effect on March 26, 1995, set forth the elements of aggravated murder as follows:
 "(A) No person shall purposely, and with prior calculation and design, cause the death of another.
"* * *
 "(D) No person shall be convicted of aggravated murder unless he is specifically found to have intended to cause the death of another."
In the present case, the state produced evidence that Appellant had threatened to kill Grimes approximately six to eight months prior to the night of the murder as well as within twenty-five minutes of the actual shooting. (Tr. 37, 41, 74-76, 212). The state's evidence also included that while at Grimes' house, Appellant stated that, "[n]o one's going to leave here unless somebody got shot." (Tr. 74). Evidence that Appellant had been carrying a gun for some time prior to the shooting was introduced. (Tr. 55, 57, 63). In addition, the state produced testimony that Appellant had fired two gunshots into Grimes' home approximately six months prior to the date of the fatal shooting. (Tr. 112-113).
Grimes' fiancee testified that Appellant shot Grimes. (Tr. 80-83). The evidence showed that Grimes died from a gunshot wound to the head (Tr. 13), that the gun retrieved from the scene was fully functional (Tr. 239), that one spent bullet casing remained in the gun when found at the scene (Tr. 239) and that a bullet fired from the gun was removed from the exterior of Grimes' house (Tr. 245).
While we must note that the trial court ultimately acquitted Appellant on the aggravated murder charge and thus, Appellant suffered no harm, based on the evidence presented prior to the close of the prosecution's case and after viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could find all the essential elements of aggravated murder were placed into evidence. We therefore hold that Appellant's first assignment of error lacks merit.
With respect to Appellant's third assignment of error, R.C. § 2923.12(A) states that, "No person shall knowingly carry or have, concealed on his person or concealed ready at hand, any deadly weapon or dangerous ordnance."
At trial, the evidence revealed that Appellant placed a gun in the back of his pants for at least part of the evening. (Tr. 55, 63). Mr. George testified that Appellant had the gun in the back of his pants when he went into Grimes' house. (Tr. 36). George also testified that at one point, Appellant's shirt covered the gun. (Tr. 55). Tellingly, in the audio tape of Appellant's statement to police, Appellant admitted that he had the gun stuffed in the back of his pants when he confronted Grimes.
Construing the evidence in a light most favorable to the prosecution, a reasonable finder of fact could determine that all of the elements of the crime of carrying a concealed weapon were present beyond a reasonable doubt. We therefore hold that Appellant's third assignment of error lacks merit.
Appellant's second assignment of error alleges:
 "APPELLANT'S CONVICTION FOR VOLUNTARY MANSLAUGHTER WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
Appellant argues that his conviction for voluntary manslaughter was against the manifest weight of the evidence. He argues that there was no evidence, and certainly not evidence beyond a reasonable doubt, that Grimes provoked Appellant to act under a sudden fit of passion or rage as required by R.C. §2903.03(A).
The issue of whether a trial court judgment is against the manifest weight of the evidence was addressed extensively inState v. Thompkins (1997), 78 Ohio St.3d 380. In Thompkins, the court distinguished between sufficiency of the evidence, and weight of the evidence. Id., 386. "`[S]ufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally insufficient to support the jury verdict as a matter of law." Id., quoting Black's Law Dictionary (6 Ed. 1990) 1433, and Crim.R. 29(A). "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." State v. Thompkins, 386, citing State v.Robinson (1955), 162 Ohio St. 486. The Thompkins court stated that, ". . . a conviction based on legally insufficient evidence constitutes a denial of due process." Id. at 386, citing Tibbs v.Florida (1982), 457 U.S. 31, 45.
The Thompkins court made it clear, however, that even though a court of review may find that a trial court decision should be sustained as to the sufficiency of the evidence, that reviewing panel may, nevertheless, find that the decision was against the manifest weight of the evidence. State v. Thompkins, 387 citingState v. Robinson, 487.
 "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.'"
State v. Thompkins, 387, quoting Black's, supra, 1594.
When reviewing a trial court decision on the basis that the verdict was against the manifest weight of the evidence, a court of appeals acts as a "thirteenth juror", especially when it reviews the trial court's resolution of conflicts in testimony.State v. Thompkins, 387 citing Tibbs v. Florida, 42. Furthermore:
 "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."
State v. Thompkins, 387 quoting State v. Martin (1983), 20 Ohio App.3d 172,175.
In Thompkins, the Ohio Supreme Court also stated, "* * * the Double Jeopardy Clause does not preclude retrial of a defendant if the reversal was grounded upon a finding that the conviction was against the weight of the evidence. However, retrial is barred if the reversal was based upon a finding that the evidence was legally insufficient to support the conviction". State v.Thompkins, 387, citing Tibbs v. Florida, 47.
 "A verdict of not guilty, whether rendered by the jury or directed by the trial judge, absolutely shields the defendant from retrial. A reversal based on the insufficiency of the evidence has the same effect because it means that no rational factfinder could have voted to convict the defendant.
"* * *
 "As we suggested just last Term, these policies do not have the same force when a judge disagrees with a jury's resolution of conflicting evidence and concludes that a guilty verdict is against the weight of the evidence. * * * A reversal on this ground, unlike a reversal based on insufficient evidence, does not mean that acquittal was the only proper verdict. Instead, the appellate court sits as a `thirteenth juror' and disagrees with the jury's resolution of the conflicting testimony. This difference of opinion no more signifies acquittal than does a disagreement among the jurors themselves. A deadlocked jury, we consistently have recognized, does not result in an acquittal barring retrial under the Double Jeopardy Clause. Similarly, an appellate court's disagreement with the jurors' weighing of the evidence does not require the special deference accorded verdicts of acquittal.
 "A reversal based on the weight of the evidence, moreover, can occur only after the State both has presented sufficient evidence to support conviction and has persuaded the jury to convict. The reversal simply affords the defendant a second opportunity to seek a favorable judgment. An appellate court's decision to give the defendant this second chance does not create `an unacceptably high risk that the Government, with its superior resources, [will] wear down Ethel defendant' and obtain conviction solely through its persistence."
State v. Thompkins, 387-388, quoting Tibbs v. Florida 41-43. (citations and footnotes omitted.)
While Thompkins specifically addresses a manifest weight argument in the context of a jury trial, it also sets forth our standard of review for a manifest weight argument in a bench trial context. State v. Reed (June 23, 1998), Columbiana App. No. 96 CO 92, unreported, 3.
As stated in Thompkins, and Tibbs, in order to reverse a judgment as against the manifest weight of the evidence, we must first determine whether there was sufficient evidence to sustain a guilty verdict. As we stated earlier, when considering the sufficiency of evidence, a reviewing court considers all of the probative evidence and the reasonable inferences to be drawn therefrom in a light most favorable to the prosecution. The court must then determine whether a rational trier of fact could have found that all elements of the crime charged were presented beyond a reasonable doubt. State v. Filiaggi, supra, 247.[1] In the instant matter, the probative evidence, when viewed in a light most favorable to the prosecution, could lead a rational trier of fact to find that all of the elements of voluntary manslaughter were proven and thus, there was sufficient evidence on which to base a conviction on this charge.
R.C. § 2903.03 provides:
 "(A) No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another."
In his recorded statement to police, Appellant stated that he wanted to confront Grimes about the exchange of drugs for sex with Appellant's girlfriend, Sarah Montini. Appellant stated that he was "mad" that Grimes was giving "dope" to his girlfriend and that he was tired of Grimes lying to him. Appellant also stated that he was concerned that Grimes owned numerous guns and feared that Grimes would shoot him. Appellant stated that at one point, he told Grimes, "I won't take no more shit off of you." Kathleen Cruise testified at trial that Appellant and Grimes were engaged in an argument prior to the shooting. (Tr. 80). In addition, Cruise testified that Grimes raised his right arm simultaneously to being shot. (Tr. 82). Furthermore, there was medical testimony that at the time of his decease, Grimes was intoxicated on cocaine and ethanol (Tr. 19) and was himself not in a rational state.
Viewing the above evidence in a light most favorable to the prosecution, it would be reasonable to infer that Appellant and Grimes were involved in an argument that led to the shooting. Although the underlying reason for the confrontation between Appellant and Grimes is irrelevant, in and of itself, to establish the elements of voluntary manslaughter, the inferences to be drawn from the fact that the argument was predicated on a delicate matter is pertinent. It would be reasonable to infer that Grimes made a statement to or took some action toward Appellant which incited him to use deadly force so as to satisfy the elements of R.C. § 2903.03(A). Grimes raised his arm immediately prior to being shot. This could reasonably be interpreted as a threatening movement, especially when considering the evidence that Grimes owned several firearms, provoking Appellant's use of deadly force. Furthermore, Appellant's admitted statement that he would take, "no more shit," from Grimes could reasonably be inferred as a passionate or enraged response to provocation by Grimes. In his use of a firearm, it could certainly be inferred that Appellant knew his actions would cause the death of Grimes.
Having determined that there was sufficient evidence at trial to sustain a charge of voluntary manslaughter, we must now determine whether the conviction on that charge is supported by the weight of the evidence. As stated earlier, we are to weigh the evidence and the reasonable inferences to be drawn therefrom, consider the credibility of witnesses and resolve conflicts in the evidence. State v. Thompkins, supra, 387. Of course, in so doing, we must still give deference to the trial court in its role of factfinder and bear in mind that the trial court judge was in the best position to determine credibility having actually observed the witnesses and their demeanor while testifying.
With this admonition in mind, and with the knowledge that there is no question that Appellant shot and killed Grimes, we once again turn to the record. First, the evidence does not indicate what statements, if any, Grimes made to Appellant during this argument. It is reasonable to infer based on the surrounding circumstances that Grimes' statements and actions during the argument drove Appellant to a sudden fit of passion or rage. While there is no direct evidence of provocation by Grimes, we may draw any inferences which can permissibly be drawn from the evidence on the record. There is some direct evidence that Appellant was acting out of sudden passion or rage. We do have his statements that he was angered that Grimes purportedly gave drugs to Sarah Montini, that Appellant grew increasingly agitated in his wait for Grimes and that when Grimes arrived, an argument between the two erupted.
We recognize that the idea that Appellant was acting out of sudden passion or rage is inconsistent with portions of Appellant's own statement to police and his testimony at trial. Numerous times in his recorded statement, Appellant states that the shooting was an accident and that he never intended to kill Grimes. (Tr. 368). Discounting Appellant's self-serving statements and testimony at trial as incredible, as the trial court clearly did, this leaves us with Ms. Cruise's testimony at trial in which she stated that Appellant made deadly threats while waiting for Grimes to return home and upon his actual return engaged in an argument with Grimes. Most importantly, the trial court had Cruise's testimony that at one point in the argument, an intoxicated Grimes raised his arm in what could be seen by Appellant, who was also admittedly intoxicated, as a threatening manner. It was at this moment that Appellant shot him.
We conclude that it can be rationally inferred from the evidence that Appellant acted in response to the serious provocation of the victim. In looking at the credibility determinations made by the trial court judge, who acted as the sole finder of fact, we cannot say that the trial court lost its way and that a manifest miscarriage of justice occurred. Further, as in State v. Thompkins, supra, we do not believe that this is such an exceptional case that the evidence weighs heavily against the conviction. While we may not have ourselves ruled the way the trial court ruled, we do not have the benefit of being present at trial here. Thus, we will not reverse on this issue and affirm the determination of the trial court.
We note here that although we find that Appellant's voluntary manslaughter conviction is supported by the manifest weight of the evidence, we are also aware of a persuasive body of law which would otherwise support an affirmance of the trial court decision. There exists a body of law in states outside of Ohio where reviewing courts have affirmed manslaughter convictions absent evidence of the necessary elements of manslaughter where the defendants were tried on aggravated murder or murder and the evidence would have supported conviction on the charged offenses. Annotation (1983) 19 A.L.R.4th 861, §§ 5-6. These cases essentially conclude that a defendant cannot complain that the outcome of the case was more favorable to him than the evidence warranted; in other words, a defendant cannot avail himself of an error in his favor which, acquit him of any degree of homicide.Id.; Murphy v. People (1887), 9 Colo. 435, 13 P. 528; People v.Muhlner (1896), 115 Cal. 303, 47 P. 128; Chapman v. State
(Tex.Crim.App. 1899), 53 S.W. 103; Hasenfuss v. State (1901),156 Ind. 246, 59 N.E. 463; Williams v. State (1917), 73 Fla. 1198,75 So. 785; Commonwealth v. Kellyon (1923), 278 Pa. 59, 122 A. 166;Jimmerson v. State (1925), 169 Ark. 353, 275 S.W. 662;Commonwealth v. Steele (1949), 362 Pa. 427, 66 A.2d 825;Commonwealth v. Frazier (1963), 411 Pa. 195, 191 A.2d 369, later app. 216 A.2d 337; State v. Nibarger (Mo. 1965), 391 S.W.2d 846;Commonwealth v. Hill (1971) 444 Pa. 323, 281 A.2d 859; State v.Vestal (1973), 283 N.C. 249, 195 S.E.2d 297, cert. denied414 U.S. 874; State v. Vega (1979), 40 N.C. App. 326, 253 S.E.2d 94, cert. denied 444 U.S. 968.
In the present case, the record before us seems to contain, on review, sufficient evidence on which Appellant could easily have been convicted of murder or aggravated murder. There was evidence submitted which, if considered credible by the trial court, tended to show prior calculation and design on Appellant's part. Unquestionable, Appellant fired the shot that killed Grimes. Considering the aforementioned body of law, should Ohio go the way of its sister states, Appellant could not now complain of his conviction of a lesser degree offense in light of the evidence that warranted a conviction on the higher charge and thus, a more severe penalty for him.
Appellant's fourth assignment of error alleges:
 "THE DEFENDANT-APPELLANT WAS IMPROPERLY CONVICTED AND SENTENCED FOR A FIRE ARM [sic] SPECIFICATION IN COUNT TWO OF THE INDICTMENT."
Appellant argues that his original indictment on April 21, 1995, contained a prejudicial error in the firearm specification to Count Two. The firearm specification did not contain Appellant's name, but rather, listed the name of George Lamont Cunningham. The focus of Appellant's argument is that judicial amendment of an indictment to cure a fatal omission is impermissible. Appellant argues that by failing to name him specifically, the indictment lacked a material element. Appellant concludes that the lack of such material element constituted a fatal omission which the trial court could not cure.
Appellant's argument lacks merit for several reasons. First, Appellant is mistaken in his belief as to how the indictment in this matter was amended. Section 10, Article 1 of The Ohio Constitution requires that a charging document be the product of a Grand Jury. In the present case, the Grand Jury issued a superseding indictment correctly stating Appellant's name with respect to the firearms specification. The superseding indictment was filed before Appellant made any filing in response to the original indictment.
Second, assuming that the Grand Jury had not issued a superseding indictment, Appellant's argument would still lack merit. "When the sufficiency of an indictment is not raised upon trial, the indictment must be held sufficient unless so defective that it does not by any reasonable construction, charge the offense for which defendant was convicted." State v. Stone
(1971), 30 Ohio App.2d 49, 56. An indictment is not invalidated by defects which do not prejudice the substantial rights of the defendant. R.C. § 2941.08. Further, a conviction will not be reversed in any court because of:
 "An inaccuracy or imperfection in the indictment, * * *, provided that the charge is sufficient to fairly and reasonably inform the accused of the nature and cause of the accusation against him * * * unless it appears affirmatively from the record that the accused was prejudiced thereby or was prevented from having a fair trial."
R.C. § 2945.83.
Appellant did not raise the issue of the sufficiency of the indictment at trial. On appeal, Appellant fails to argue that he was prejudiced by the error in the original indictment. Appellant did not demonstrate that he was unaware of the charged specification nor does the record reflect any misunderstanding of that specification. Regardless whether there was any defect in the original indictment, as Appellant was charged with carrying a concealed weapon with a physical harm specification and also charged with aggravated murder, the indictment can be reasonably construed as informing Appellant of the specification as well. In fact, given that Appellant pled not guilty to all charges in the indictment and defended himself without objecting to any error in the indictment, it is inconceivable that he would argue that he was not aware of a firearm specification and not prepared to defend himself accordingly. For all of the above reasons, we find this assignment of error lacks merit.
Appellant's fifth assignment of error alleges:
 "THE COURT ERRED IN ALLOWING A PROSECUTION WITNESS TO REFRESH HER MEMORY FROM AN UNSWORN STATEMENT."
Appellant argues that the state improperly permitted Kathleen Cruise to refresh her recollection with a written statement that she gave to police on the night of killing. Appellant contends that by reading her unsworn statement and by allowing the prosecution to question her with regard to the content of the statement, the court committed reversible error. It is Appellant's position the state did not lay a proper foundation to refresh her recollection. Rather, Appellant contends that the state was dissatisfied with the witness' answers to the questions posed and sought to contradict her testimony by having her review her statement to the police. This, according to Appellant, constituted an improper impeachment of the witness.
We decline to address the merits of this assignment of error, as any error on the part of the trial court would constitute harmless error. The testimony on which Appellant bases his complaint tends to prove that Appellant threatened the victim prior to his death. Such evidence would only be relevant to proving prior calculation and design as elements of aggravated murder. See, R.C. § 2903.01(A). Appellant was acquitted at trial of aggravated murder and is not prejudiced by the admission of evidence tending to support the elements of that crime. Furthermore, any threats Appellant may have made toward Grimes are irrelevant to a finding of guilty on the charge of carrying a concealed weapon. See, R.C. § 2923.12. Likewise, any threats he allegedly made were irrelevant to establishing the elements of voluntary manslaughter at trial. See, R.C. § 2903.03.
We note, however, that threats toward the victim would be relevant to our earlier analysis under Appellant's first assignment of error in which he claims that the trial court erred in overruling his motion for acquittal on the charge of aggravated murder. Cruise's testimony that Appellant threatened Grimes was cumulative to other evidence that Appellant acted with prior calculation and design. The erroneous admission of evidence that is cumulative of properly admitted evidence constitutes harmless error. See, State v. Williams (1988), 38 Ohio St.3d 346,353. Even discounting Cruise's testimony that Appellant threatened Grimes, there was sufficient evidence to withstand Appellant's motion for acquittal.
For the forgoing reasons, Appellant's assignments of error are overruled and the decision of the trial court is hereby affirmed.
DONOFRIO, J., VUKOVICH, J., concurs.
APPROVED:
 ___________________________________ CHERYL L. WAITE, JUDGE
[1] We note that in his brief, Appellant argues for the imposition of the standard set forth in State v. Shane (1992),63 Ohio St.3d 630. In that case, the Ohio Supreme Court determined that jury instructions on the lesser degree offense of voluntary manslaughter are proper only where there is evidence of reasonably sufficient provocation occasioned by the victim. Id., paragraph one of the syllabus. The court imposed a two part analysis, comprised of an objective and a subjective component, to determine whether sufficient provocation exists. Id., 634. The objective component asks whether the actions of the victim would arouse the passions of an ordinary person beyond the power of his control. Id., 635. If this is found to be the case, the subjective analysis is applied; whether, under the particular circumstances of the case, the defendant's passions were aroused beyond his power of control. Id., 634. Appellant implies that based on a Shane analysis, the trial court should not have considered voluntary manslaughter.
However, this standard is irrelevant to our decision. State v.Shane clearly addresses the propriety of instructing a jury on the lesser degree offense of voluntary manslaughter. "Because the present case was a bench trial, none of the typical safeguards regarding the giving of jury instructions on lesser included offenses [or less degree offenses] is pertinent." State v.Waszily (1995), 105 Ohio App.3d 510, 519, dissenting opinion. TheShane court imposed its test out of concern that a jury may be, "* * * unduly confused if it had to consider the option of guilty to a lesser included (or inferior degree) offense when it could not reasonably return such a verdict." Id., 633. Here, there is no such concern as the trial court is presumed to understand the law regarding lesser included/degree offenses. State v. Eley
(1996), 77 Ohio St.3d 174, 183.