Filed 5/26/16  P. v. Rosales CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOSE ARMANDO ROSALES,<br><br>    Defendant and Appellant. | B260901<br><br>(Los Angeles County<br>Super. Ct. No. BA420460) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Dennis J. Landin, Judge.  Affirmed.

John Steinberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Stephanie A. Miyoshi and Nima Razfar, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted defendant and appellant Jose Armando Rosales (defendant) of second degree murder and attempted murder and found true allegations that the crimes were committed for the benefit of a criminal street gang and that a principal personally used and discharged a firearm causing death. The trial court imposed a sentence of 15 years to life for the murder, plus a consecutive term of 25 years to life under Penal Code section 12022.53, subdivision (d).[1] For the attempted murder, the court imposed a term of seven years plus 25 years to life under section 12022.53, subdivision (d), to run concurrently with the sentence imposed for the murder conviction. The trial court stayed, pursuant to section 654, a 10-year sentence under section 186.22, subdivision (b)(1)(C) for the gang enhancement.

Defendant contends his convictions must be reversed because the trial court failed to instruct the jury sua sponte that voluntary manslaughter and attempted voluntary manslaughter are lesser included offenses of murder and attempted murder and because the prosecutor committed misconduct during closing argument by misstating the law on aiding and abetting. Defendant further contends the imposition of a 25-year-to-life term for the firearm enhancement under section 12022.53 violated his federal constitutional rights to equal protection and due process.

For reasons we discuss, we affirm the judgment and sentence.

## BACKGROUND

Defendant and his co-defendant Miguel Ruiz were members of the Eastside Trece gang and were known by the monikers "Trigger" and "Malo," respectively. Eastside Trece's territory encompassed an area bordering Adams Boulevard to the north, 32nd Street to the south, Compton Avenue to the east, and Griffith Avenue to the West. Eastside Trece shared its northern border with the rival Loco Park gang.

On February 22, 2012, at approximately 8:45 p.m., defendant and Ruiz were walking within Eastside Trece's territory on 27th Street. Ruiz was wearing a black hooded sweatshirt. A Loco Park gang member known as "Puppet" drove by and threw a

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

2

bottle towards defendant that did not hit him. Puppet continued to drive and turned onto a nearby street. Defendant and Ruiz appeared angered by the incident and ran into another Eastside Trece member's residence. They left in defendant's Lincoln Town car.

That same night, Alfred Moore, Salvador Quinones, Augustin Beltran, and Beltran's younger brother Pedro, were standing in front of Moore's house near the corner of 22nd and Hooper Streets (an area north of Eastside Trece's territory). None of the four men were gang members. Just before 9:00 p.m., a man in a black-hooded sweatshirt stood at the corner where a liquor store was located and fired several gunshots at Moore and his friends. Moore was wounded in the leg and Quinones died from a gunshot wound in his chest and abdomen.

Police officers recovered 10 expended shell casings on the street and two bullets lodged in the walls of Moore's home and an adjacent home. The casings and bullets were fired from the same .40-caliber weapon. A bullet recovered from Quinones's body was consistent with a .40-caliber bullet.

Video surveillance footage recovered from nearby business establishments showed that at approximately 8:50 p.m. on February 22, 2012, a Lincoln Town car traveled north on Hooper Street with its headlights on and returned in the opposite direction a few minutes later with its headlights off. The Lincoln Town car in the surveillance video was registered to defendant.

On March 6, 2012, defendant was driving his Lincoln Town car accompanied by George Barrera, an Eastside Trece gang member, as a passenger in the car. An officer stopped defendant after he failed to signal before making a turn. After the officer obtained defendant's information and photographed the vehicle, he told defendant and Barrera they were free to go. Barrera told detectives in an April 4, 2012 interview that following the March 6 traffic stop, defendant said, "Damn fool. . . . I don't think these fools know about it, about my car, you know, because they would have taken both of us in." Defendant then told Barrera that he drove Ruiz to 22nd Street, parked his car, and remained inside as Ruiz walked towards a group of men in front of a house and started shooting at them.

Police arrested Ruiz on April 24, 2012, and recovered a black-hooded sweatshirt from his residence. Defendant was arrested shortly thereafter. Phone records indicated that both defendant and Ruiz used their cell phones in the vicinity of 22nd Street and Hooper near the time of the shooting. On the day defendant was pulled over by the police, he changed his phone number. Several days later, defendant sold his Lincoln Town car.

At trial, Officer Jordan Ornelas testified as the prosecution's gang expert and opined that the crimes were committed for the benefit of the Eastside Trece gang.

Defendant did not present any evidence at trial.

## DISCUSSION

### I. Alleged instructional error

Defendant contends the trial court erred by failing to instruct sua sponte on the lesser included offenses of voluntary manslaughter and attempted voluntary manslaughter based on heat of passion and that this error resulted in a denial of due process under the federal constitution.

Attempted voluntary manslaughter is a lesser included offense of attempted murder. (*People v. Millbrook* (2014) 222 Cal.App.4th 1122, 1137.) "Manslaughter is a lesser included offense of murder. [Citations.] The mens rea element required for murder is a state of mind constituting either express or implied malice. A person who kills without malice does not commit murder. Heat of passion is a mental state that precludes the formation of malice and reduces an unlawful killing from murder to manslaughter." (*People v. Beltran* (2013) 56 Cal.4th 935, 942, fn. omitted (*Beltran*).)

In murder cases, the trial court must instruct the jury sua sponte as to heat of passion whenever the theory is supported by substantial evidence, and even when the defendant did not rely on the theory, failed to request the instruction, or objected to the instruction. (*People v. Breverman* (1998) 19 Cal.4th 142, 154-155 (*Breverman*).) An appellate court independently determines whether the instructions should have been given (*People v. Manriquez* (2005) 37 Cal.4th 547, 584), viewing the evidence in the light that

4

most favors a duty to give the instruction and without evaluating the credibility of witnesses.  (See *Breverman*, at pp. 162-163.)

Heat of passion "is a state of mind caused by legally sufficient provocation that causes a person to act, not out of rational thought but out of unconsidered reaction to the provocation." (*Beltran, supra*, 56 Cal.4th at p. 942.)  "The provocation must be such that an average, sober person would be so inflamed that he or she would lose reason and judgment.  Adequate provocation and heat of passion must be affirmatively demonstrated.  [Citations.]" (*People v. Lee* (1999) 20 Cal.4th 47, 59-60.)  Further, as relevant here, the provocation "must be caused *by the victim* [citation], or be conduct reasonably believed by the defendant to have been engaged in *by the victim*.  [Citations.]" (*Id.* at p. 59, italics added.)

Defendant does not contend that the victims engaged in any provocatory conduct, or that he reasonably believed any of the victims to have done so.  None of the victims were gang members, and there is no evidence suggesting any of them provoked defendant.  Defendant concedes that California law requires provocation caused by the victim or conduct reasonably believed by the defendant to have been engaged in by the victim, but advocates changing the law in this regard.  As an intermediate appellate court, we are bound by the decisions of our Supreme Court and must apply the law as decided by that court.  (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

The trial court did not err by failing to instruct the jury, sua sponte, regarding voluntary manslaughter and attempted voluntary manslaughter.

## II.  Alleged prosecutorial misconduct

Defendant contends the prosecutor committed misconduct by misstating the law on aiding and abetting during closing argument.  Specifically, defendant objects to the prosecutor's comments that defendant was "equally guilty" as the perpetrator by aiding and abetting in the shooting.  Those comments, defendant argues, improperly asserted that the jury need not consider defendant's mens rea when assessing his guilt.

"The standards governing review of misconduct claims are settled.  'A prosecutor who uses deceptive or reprehensible methods to persuade the jury commits misconduct,

5

and such actions require reversal under the federal Constitution when they infect the trial with such "'unfairness as to make the resulting conviction a denial of due process.'" [Citations.] Under state law, a prosecutor who uses such methods commits misconduct even when those actions do not result in a fundamentally unfair trial. [Citation.] In order to preserve a claim of misconduct, a defendant must make a timely objection and request an admonition; only if an admonition would not have cured the harm is the claim of misconduct preserved for review. [Citation.]' [Citation.]" (*People v. Parson* (2008) 44 Cal.4th 332, 359.) Even when a prosecutor makes improper comments, reversal is not required unless there is "'a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner. [Citations.] In conducting this inquiry, we "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements. [Citation.]' [Citation.]" (*People v. Brown* (2003) 31 Cal.4th 518, 553-554, quoting *People v. Frye* (1998) 18 Cal.4th 894, 970.)

Defendant concedes that his trial counsel did not object to the challenged comments, and that his claim would therefore generally be forfeited. (*People v. Benson* (1990) 52 Cal.3d 754, 794.) He argues in the alternative that any failure to object establishes ineffective assistance of counsel. Even if defendant's claim of misconduct had not been forfeited, we conclude there is no merit either to that claim or to his alternative ineffective assistance claim.

To say that an aider and abettor and a direct perpetrator are "equally guilty" is not a misstatement of the law, although it can be an incomplete description of the law of aiding and abetting in certain circumstances. (*People v. Loza* (2012) 207 Cal.App.4th 332, 349-350.) Prior to 2010, CALCRIM No. 400 defined the general principles of aiding and abetting by providing that "'[a] person is *equally guilty* of the crime [of which the perpetrator is guilty] whether he or she committed it personally or aided and abetted the perpetrator who committed it.' [Citation.]" (*People v. Samaniego* (2009) 172 Cal.App.4th 1148, 1165.) The instruction was modified in 2010 to omit the word "equally" after some appellate courts noted that in certain circumstances, an aider and

6

abettor may have a mental state giving rise to a greater or lesser degree of culpability than that of the direct perpetrator, so that the phrase "equally guilty" might sometimes be misleading. (*Id.* at pp. 1164-1165; *People v. Nero* (2010) 181 Cal.App.4th 504, 518-519.) California courts continue to recognize, however, that "'[g]enerally, a person who is found to have aided another person to commit a crime is "equally guilty" of that crime.' [Citation.]" (*People v. Loza, supra*, 207 Cal.App.4th at pp. 345-350, quoting *People v. Lopez* (2011) 198 Cal.App.4th 1106, 1118.) The challenged comments by the prosecutor in this case, taken in context, merely reiterated this general principle. The prosecutor accordingly did not commit misconduct by misstating the law.

Because the challenged comments did not amount to misconduct by the prosecutor, defense counsel's failure to object to those comments did not constitute ineffective assistance of counsel. (*People v. Farnam* (2002) 28 Cal.4th 107, 174.) To establish ineffective assistance, a criminal defendant must show that counsel's performance was so deficient as to constitute a failure to function as "counsel" guaranteed by the Sixth Amendment, and that counsel's deficiencies were so prejudicial that the defendant was deprived of a fair trial. (*Strickland v. Washington* (1984) 466 U.S. 668, 687; *People v. Pensinger* (1991) 52 Cal.3d 1210, 1252.) A mere failure to object seldom establishes counsel's incompetence (*People v. Thomas* (1992) 2 Cal.4th 489, 531), and cannot do so when the objection itself lacked merit. Moreover, as we discuss, the failure to object created no prejudice.

Even assuming the challenged comments were improper, there is no reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner. The jury was instructed by the trial court using the most recent version of CALCRIM No. 400, omitting the "equally guilty" language, and the court further instructed that if the attorneys' comments on the law conflicted with the court's instructions, the jury must follow the court's instructions. In addition, the trial court's instructions other than CALCRIM No. 400 required the jury to find that defendant acted with the requisite mental state for aiding and abetting the crimes. The instructions explained that "[s]omeone *aids and abets* a crime if he knows of the perpetrator's

7

unlawful purpose and he specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime." Nothing in the record suggests that the jury was confused about the court's instructions on aiding and abetting, and the jury is presumed to have followed those instructions. (*People v. Boyette* (2002) 29 Cal.4th 381, 436.)

We find no misconduct on the part of the prosecutor, and even assuming misconduct, defendant suffered no prejudice from the challenged comments or from the failure to object to those comments. (*People v. Cunningham* (2001) 25 Cal.4th 926, 1038.)

## III. Alleged cumulative error

Defendant contends the cumulative effect of the prosecutor's comments and the trial court's failure to instruct the jury on the lesser included offenses combined to deprive him of a fair trial. Under the cumulative error doctrine, a number of errors may be harmless individually, but their cumulative effect may warrant reversal. As none of defendant's individual claims of prosecutorial misconduct or instructional error have merit, his claim of cumulative error also fails.

## IV. Alleged sentencing error

Defendant contends the imposition of the 25 years to life sentencing enhancements under sections 12022.53, subdivisions (d) and (e)(1) for aiding and abetting a gang-related murder and attempted murder violated his federal and state constitutional rights to due process and equal protection. He further contends the statute is subject to strict scrutiny when determining the merits of his equal protection claim because it impinges upon his personal liberty, a fundamental interest under both the federal and California constitutions.

"Section 12022.53, subdivisions (d) and (e)(1)(B) . . . require the trial court to impose a consecutive 25-years-to-life sentence enhancement when a defendant is convicted of murder for the benefit of a criminal street gang and '[*a*]*ny* principal in the offense' 'personally and intentionally discharges a firearm and . . . causes . . . death, to any person other than an accomplice.'. . . Under this sentencing regime an aider and

8

abettor who is found guilty of murder is subject to the 25 years to life enhancement even though he or she did not personally and intentionally discharge a firearm causing death if the murder was committed for the benefit of a criminal street gang and 'any principal' in the offense personally and intentionally discharged a firearm causing death. In all other killings subject to section 12022.53, subdivision (d) -- that is, killings not for the benefit of a criminal street gang -- a principal, including an aider and abettor, is only subject to the 25-year enhancement if he or she personally and intentionally discharged a firearm causing death." (*People v. Hernandez* (2005) 134 Cal.App.4th 474, 480 (*Hernandez*), fns. omitted.)

Defendant argues the foregoing statutory scheme violated his right to equal protection under the law because there is no compelling or rational basis for the disparity in treatment between aiders and abettors in gang-related shootings and aiders and abettors in non-gang shootings. This same argument was rejected by Division Seven of this court in *Hernandez*. The court in *Hernandez* concluded: "Clearly the Legislature had a rational basis for imposing a 25-years-to-life enhancement on one who aids and abets a gang-related murder in which the perpetrator uses a gun, regardless of the relationship between the aider and abettor and the perpetrator. As we previously observed, the purpose of this enhancement is to reduce through punishment and deterrence 'the serious threats posed to the citizens of California by gang members using firearms.' One way to accomplish this purpose is to punish equally with the perpetrator a person who, acting with knowledge of the perpetrator's criminal purpose, promotes, encourages or assists the perpetrator to commit the murder." (*Hernandez, supra*, 134 Cal.App.4th at p. 483, fn. omitted.)

Defendant next argues section 12022.53 is overinclusive because it does not require active participation in a gang but imposes vicarious liability regardless of the aider and abettor's level of participation in or commitment to the gang. The court in *Hernandez* rejected this argument as well, noting that for the purpose of suppressing gun violence perpetrated by criminal street gangs, "[i]t is irrelevant . . . whether the aider and

9

abettor was a hard-core gang member or merely a 'wannabe.'" (*Hernandez, supra*, 134 Cal.App.4th at p. 483.)

The court in *Hernandez* applied the rational basis standard, and not strict scrutiny, in analyzing whether the sentencing scheme imposed by section 12022.53 violated equal protection. The court noted that although the California Supreme Court had applied the strict scrutiny standard to invalidate a sentencing scheme that punished youthful offenders more severely than adults convicted of the same crime (see *People v. Olivas* (1976) 17 Cal.3d 236, 250-251), subsequent California appellate court decisions have not interpreted *Olivas* as requiring strict scrutiny of every criminal law imposing punishment. (*Hernandez, supra*, 134 Cal.App.4th at p. 483.) The court in *Hernandez* concluded that when the question is not *whether* to deprive the defendant of his liberty but *for how long*, "rational basis review, not strict scrutiny, is the appropriate test to resolve an equal protection challenge." (*Ibid.*)

Defendant contends section 12022.53, subdivision (e)(1) violates due process by allowing the imposition of an enhancement on an aider and abettor "who is convicted of murder as the natural and probable consequence of a target offense, without any requirement that the jury find the aider and abettor knew or intended that the homicide be committed by the use or discharge of a firearm." The statute, defendant argues, "allows vicarious liability without any finding of fact that the aider and abettor had such knowledge or shared intent." This argument was rejected by the court in *People v. Gonzales* (2001) 87 Cal.App.4th 1. The *Gonzales* court noted that the "argument is contrary to aider and abettor jurisprudence in California. . . . [T]he only requirement is that the aider and abettor intend to facilitate the target offense and that the offense ultimately committed is the natural and probable consequence of the target offense." (*Id.* at p. 15.)

We agree with the reasoning of the courts in both *Gonzales* and *Hernandez*. The sentencing enhancements imposed pursuant to section 12022.53, subdivisions (d) and (e)(1) did not violate defendant's constitutional rights to due process and equal protection.

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
CHAVEZ


We concur:



_____, P. J.
BOREN



_____, J.
ASHMANN-GERST


11